Harris Calorific Company, Appellant, *v.* Marra et al.

Argued September 30, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*A. Leo Weil, Jr.,* of *Weil, Christy & Weil,* for appellant.

*Sidney J. Watts,* of *Baker & Watts,* with him *J. M. McCready,* for appellee.

OPINION BY MR. JUSTICE PARKER, November 23, 1942:

The question raised by this appeal in a proceeding in equity is whether a written contract between the parties is enforceable. The court below found that the agreement constituted an illegal restraint of trade. We have come to a different conclusion.

In October, 1939, Harris Calorific Company, the plaintiff, was engaged in the manufacture and sale of welding and cutting apparatus, especially cutting and welding torches. It disposed of its product through various dealers and distributors; it employed no salesmen but it did service its products. The Welders Service Company was and had been for a considerable period a dealer or distributor of plaintiff's products in Pittsburgh and vicinity. Daniel A. Marra was engaged in

business under the name of National Torch Tip Company in Pittsburgh and vicinity. He made and sold welding and cutting tips of various kinds to be used on cutting and welding torches of all the various manufacturers, twelve or fifteen in number. Marra desired to purchase all the stock of Welders Company but wished to be assured before making the purchase that Harris Company would not take away from Welders Company the distributing rights which it held for Harris products.

Negotiations resulted in a written contract between plaintiff and defendant consummated November 3, 1939, when Marra had purchased the stock of Welders Company, the essence of which was thus expressed in the writing: "However, as a condition material of our agreeing to leave the Harris Agency with The Welders Service Co. in the event of your purchase of the latter, you distinctly and absolutely undertake and guarantee that the National Torch Tip Co., its successors and/or assigns, any representative thereof or yourself on behalf of the National Torch Tip Co. or on your own behalf, will not sell or offer for sale under any condition whatsoever, Tips manufactured by the National Torch Tip Co. which may be used with any Harris Torch whatsoever, Cutting or Welding, to any customer of The Welders Service Co. as per list hereto attached and made a part of this letter; the number of customers enumerated are    and the list has been furnished us by The Welders Service Co. as having been taken from their ledger, the names appearing on the list being customers whom they have sold at sometime in the past. To put it in another way, you will not sell to any single customer who has ever been served by The Welders Service Co. whose name appears on the attached list of their ledger accounts anything but genuine Harris parts, whether they be Tips, repair parts or whatnot." The list of customers, approximately 800, was furnished from the books of Welders Company and was approved by Marra.

The parties acted on the contract without complaint until April 11, 1940, when Marra advised Harris Company that he had sold his interest in Welders Company and that the contract was at an end. Thereafter, Marra made sales of torch tips of his own manufacture to some of the customers appearing on the list as approved by him. This bill was then filed asking for a restraining order.

Before considering the main question involved one finding of fact by the chancellor requires consideration as that fact seems to have largely influenced the court below in arriving at the conclusion that the agreement was not enforceable and is of importance in framing a decree. The 13th finding of fact by the chancellor was as follows: "The customers' list marked Exhibit 'E', containing almost 800 names, has included thereon most of the probable consumers of torch tips within the reasonable sales territory of the defendant as it existed prior to October 1939, and subsequent thereto." The chancellor in part of his opinion under the head of discussion further said on the same subject: "While the number of customers of The Welders Service Company is limited to approximately 800, nevertheless it appears from the testimony that on this list are the names of all the large users of torch tips in Pennsylvania, Ohio, West Virginia and Maryland, and from the names of the companies it appears that some of them are the largest manufacturing corporations in the United States, with plants in other states than those mentioned."

The list referred to in the contract gave both the name and address of the customer, e. g., "American Steel & Wire Co., Donora Steel Works, Donora, Pa." The court below interpreted this as forbidding sales to any of the plants of the American Steel & Wire Company. Assume that the Wire Company had a business at Cleveland or Chicago. We interpret the contract, as does the appellant, so that the restriction only applies to the Donora Works and does not extend to all of the busi-

ness of that large corporation. The same observation is true as to other large corporations. We are bound to give that construction to the contract if reasonably possible which will preserve the validity of the contract. Under such circumstances it seems to be clear that the restriction only extended to the business done at the plant described in the list. This construction materially restricts the area which is covered by the covenant.

While it is not necessary, a resort might be had to the principle that the fact that a contract in restraint of trade is more extended than the law allows will not preclude the enforcement of separable lawful restrictive promises: 3 Williston on Contracts §1659; *Smith's Appeal,* 113 Pa. 579, 590, 6 A. 251.

We are here dealing with a situation where under the admitted facts the business or trade of both parties extended beyond state lines and where the restriction if enforced would leave open to the defendant all territory in this or other countries outside a radius of approximately two hundred miles and also leave defendant free to sell his own tips to many customers even within that area. It follows that the restriction as to area is limited. Broader restrictions have frequently been held enforceable: *Monongahela, etc. Co. v. Jutte,* 210 Pa. 288, 59 A. 1088; *Cropper v. Davis,* 243 Fed. 310; *Knapp v. S. Jarvis Adams Co.,* 135 Fed. 1008; *Alden v. Wright,* 162 N. Y. Supp. 668; *Diamond Match Co. v. Roeber,* 106 N. Y. 473, 13 N. E. 419.

We have said that an agreement of this character if limited in space, though unlimited in time, is prima facie good (*Sklaroff v. Sklaroff,* 263 Pa. 421, 425, 106 A. 793; *Holland v. Brown,* 304 Pa. 545, 156 A. 168) and that the burden is on him who sets up unreasonableness as the basis of illegality as a defense in a suit to enforce a contract "to show how and why it is unlawful" (*Holland v. Brown,* supra, p. 548; *Harbison-Walker R. Co. v. Stanton,* 227 Pa. 55, 63, 75 A. 988). With the broadening of the avenues of trade and the increase in facili-

ties for transacting business mere extent of area has ceased to be a controlling factor. What would be a reasonable restriction as incident to the sale of a wholesale business might be unreasonable as applied to a country physician selling his practice.

It is now the rule in this jurisdiction as well as most others that where a contract is limited as to time or space it is not ipso facto against public policy but it is necessary to make further inquiry and determine whether the restriction is reasonable: *Monongahela v. Jutte,* supra; *Henschke v. Moore,* 257 Pa. 196, 201, 101 A. 308.

Restatement, Contracts, §515 states five particulars in which a restraint of trade is generally unreasonable. It is unreasonable "if it (a) is greater than is required for the protection of the person for whose benefit the restraint is imposed, or (b) imposes undue hardship upon the person restricted, or (c) tends to create, or has for its purpose to create, a monopoly, or to control prices or to limit production artificially, or (d) unreasonably restricts the alienation or use of anything that is a subject of property, or (e) is based on a promise to refrain from competition and is not ancillary either to a contract for the transfer of good-will or other subject of property or to an existing employment or contract of employment." Appellee and the court below thought this contract unreasonable in the first three respects.

The restraint imposed on Marra was not greater than was required for the protection of Harris Company. Marra, in consideration of Harris Company continuing as theretofore to allow Welders Company to be the distributor for Harris Company, covenanted that he would not sell to customers of Welders Company tips or repair parts other than genuine Harris parts. Marra, through control of Welders Company, was becoming in effect distributor for Harris and the covenant required nothing more than was customary, fair and

reasonable in such transactions. It imposed upon Marra the duty of promoting the sale of Harris tips and parts rather than National Company parts. But there were additional reasons why the covenant was necessary for the protection of Harris Company. That company had adopted business expedients such as servicing its equipment; it had acquired information as to the different kinds of torch tips, more than 150 in number, which were used by the different customers and the results that had been obtained from the use of the various tips, important items in salesmanship. Marra not only received the benefit of this and other information already gathered but in his new relation would obtain like information in the future.

No undue hardship was imposed on Marra. He entered into the contract as an experienced dealer who knew the business. He solicited the arrangement and should abide by his agreement. He received a valuable consideration in return. The distributor agency which Harris covenanted to leave with the Welders Company included the right to sell welding and cutting apparatus while Marra had formerly been confined to the sale of tips only. It is difficult to see how one can suggest any undue hardship on Marra when nothing more was required than is usual in such transactions. If Marra suffered it was due to his bargain and not to the illegality of the restriction.

Neither do we find any merit in the suggestion that the agreement tended to create a monopoly or control prices. The public still had access to twelve or fifteen other dealers and 150 different kinds of torch tips. Plaintiff alone had 86 different distributors of its products. Certainly a manufacturer can operate through distributors, choose his agents and prescribe how the business shall be operated without creating a monopoly. We do not find any evidence which would warrant the conclusion that these restrictions constituted a monopoly or would unreasonably affect the public adversely.

The decree is reversed at the cost of the appellee and the record is returned to the court below that an injunction may issue in harmony with this opinion.