**AUTOMOTIVE DEVICES COMPANY**

**v.**

**AUTOMOTIVE DEVICES COMPANY OF PENNSYLVANIA.**

**Civil Action No. 26687.**

United States District Court
E. D. Pennsylvania.

Jan. 18, 1960.

[1]. Sweeney, Report to the Civil Aeronautics Board of a Study of Proposed Aviation Liability Legislation (June 1, 1941).

Charles M. Solomon, of Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for plaintiff.

Maurice J. Klein, of Abrahams & Loewenstein, Philadelphia, Pa., for defendant.

VAN DUSEN, District Judge.

### I. *History of the Case*

Testimony was originally taken in this case at a hearing held July 27, 1959, on plaintiff's motion for a preliminary injunction (Document No. 6). As a result of a stipulation filed September 10, 1959, the testimony taken at that hearing, together with the testimony taken at hearings held September 11, 1959, and October 6, 1959, are now before the court for final determination of the issue of liability, with the issue of damages to be tried later in the event that the court finds that the defendant is liable on this record (see stipulation, being Document No. 9). Defendant has withdrawn the Fifth Defense stated in its Answer.[1] The briefs filed in November and December have been filed with the Clerk as Documents Nos. 15 and 18.

This is an action in equity for enforcement by injunctive relief of a restrictive covenant. Under date of October 4, 1954, the parties entered into two agreements. The one, which is Exhibit A attached to the Complaint, is the basis for this suit. The parties had, prior thereto, been as-

[1]. See page 17 of defendant's brief (Document No. 15), where it is said:
"Defendant is not pressing its Fifth Defense, based on illegal restraint of trade under the Sherman Anti-trust Law [15 U.S.C.A. § 1 et seq.]."

sociated in a business venture operating out of Boston and Philadelphia, respectively. This agreement covers the provisions pertaining to the severance of this business in which the plaintiff took over the Massachusetts portion of the business and the defendant took over the Philadelphia portion of the business. The agreement contains the normal provisions pertaining to the division of the assets which are not germane to the issue in this case. The agreement further contains a provision whereby each of the parties receives an exclusive geographic territory. All territories not so specified are open to both companies. The agreement specifies the names which may be used by each of the companies and their right to the joint use of the trademark "ADCO." No provision is contained in the agreement setting forth its term of duration. The suit is based upon the alleged breach of this agreement by sales and solicitation of customers by defendant within the exclusive geographic territory assigned to plaintiff. The defendant admits both the sales and the solicitation of customers, but takes the position that the agreement has terminated.

The second agreement, which is "D–1," entered into on the same date, provides for the exclusive purchase between the parties of the items manufactured by the other party to the agreement and has been terminated.

During the trial, the court suggested that if the parties could agree on special questions, the case could be decided more promptly. However, counsel apparently misunderstood the number of questions contemplated and the large number of questions filed by the parties (see Documents Nos. 13 and 17) have probably not resulted in any saving of court time.[2] The extraordinarily large number of special questions of law (36 by plaintiff and 12 by defendant) filed by the

parties (see Documents Nos. 14 and 16) have not reduced the task of the trial judge and separate Conclusions of Law are being filed in an effort to keep simple a case which might be complicated by answering a great many questions of law, which in many instances are too general to be of help. The careful briefs and the time spent by counsel on the questions are appreciated.

Since the defendant is found liable on this record, it is suggested that either party promptly order the matter down on the trial list so that the trial on the issue of damages may be held without any unnecessary delay.

## II. *Findings of Fact*

The trial judge makes the following Findings of Fact by answering the special questions contained in Documents Nos. 13 and 17 in the Clerk's file, together with such comments as appear below:

1. Yes.

2. Yes to one customer of plaintiff (Montgomery Distributors, of Providence, R. I.—N.T. 100–103).

3. Yes to one customer of plaintiff (see 2 above).

4. Yes.

5. Yes.

6. Yes, but not a material question.

7. Yes insofar as the following four accounts, with checkmarks beside them on P–1, are concerned:[3]

Binghamton Auto Wrecking
Star Auto Parts
K & M Motor Parts
United Auto Parts, Inc.

8–9. The defendant's objections to these questions as worded are sustained. See answers to questions 32 and 33 and Discussion.

10 & 11. Yes.

12. No.

---

2. It is suggested that counsel consult the record in Hankinson v. Pennsylvania Railroad Company, D.C., 160 F.Supp. 709, for an example of where the relatively few questions greatly expedited the decision in the matter.

3. The contract was modified as to these four customers by conduct after it became effective, as well as by parol (N. T. 9, 169–171, 179–181).

13. Yes.

14. Yes. The fact that defendant gave another company in its area the right to use the common trademark when paragraph 6 of Exhibit A contained this sentence has bearing on plaintiff's right to injunctive relief:[4]

> "Both companies shall have the right to use the trademark 'ADCO', even though both marks be maintained in the identical character as they now exist."

15–18. These questions are so phrased that answering them would be misleading. The parties and their attorneys did not overlook the possibility of including a term in Exhibit A which should apply to paragraphs 5 and 6. The meaning of the words used, in the light of the conduct of the parties, requires the construction that these paragraphs shall be binding as long as the parties use the trademark "ADCO" or the names specified in paragraph 6 of the Complaint. The parties probably contemplated that they would use the trademark and the names indefinitely and, hence, intended that the term of these two paragraphs should be indefinite, but their unexpressed, probable intent has very slight weight even if admissible. See Discussion.

19–21. Yes.

22. Yes (see P–3, P–4, P–12, P–13, D–3 and D–7).

23. Yes.

24. Yes. See Discussion and Question 37.

25 & 28. Irrelevant.

26. Yes.

27. Repetitive and irrelevant.

29 & 30. Yes.

31. No.

32 & 33. Yes.

34 & 35. Objections of plaintiff sustained. See Discussion.

36. No. The agreements in paragraphs 5 and 6 of Exhibit A will only terminate if either party discontinues use of both the trademark and the name mentioned in paragraph 6.

37. This question as phrased is irrelevant. Paragraph 5 of the contract marked Exhibit A does not apply to sales forming part of an exchange or otherwise if made for the purpose of securing supplies. The plaintiff has not made sales contemplated by section 5(b) in the territory described in that section. See Discussion.

38–40. Yes.

41. There is not sufficient evidence to give an affirmative answer to this question as worded.

42. There is every indication that the answer to this question is "yes" and the trial judge would so find if answering the question were necessary to the disposition of the case. Defendant has made sales to the six unchecked concerns on Exhibit P–1, which are in plaintiff's exclusive territory, and there is no reason to believe that it has not sent those concerns its catalog and cost lists bearing the ADCO label, such as Exhibits P–3 and P–4. At N.T. 119–120, Mr. Sooper only testified that he did not know what label defendant had used for such sales, using this language at N.T. 120:

> "I don't know that he has sold either under the Adco or private label in any of the other parts of the territory."

As indicated below under Discussion, Section 6, when read with Section 5, gives plaintiff the right to use the name "Automotive Devices Co." exclusively in the area where these six concerns are located and, by selling to them, defendant is, at the least, using this name in that area, which is a violation of the agreement.[5]

---

4. The fact that Adco Warehouse of Baltimore, Md., has gone out of business makes this improper conduct of very slight significance in considering plaintiff's right to injunctive relief as of this date.

5. The fact that "of Pennsylvania" is added to defendant's name is not a significant difference in the light of the wording of these two sections when read together.

43. The record contains no such threats, but this question seems irrelevant for many reasons.

44. Yes.

### III. *Discussion*

There are four principal questions presented by this record, as follows:

A. The phrase "right to do business", as used in paragraphs 5(a) and 5(b) of the contract attached as Exhibit A to the Complaint, includes the right to make sales (except for sales forming part of an exchange or otherwise if made for the purpose of securing supplies) but does not contemplate purchases.

Paragraph 5 of this contract provides as follows:

"5. (a) Boston shall have the exclusive right to do business in the following territory:

"New England and New York State, with the exception of metropolitan New York City area and the five boroughs.

"(b) Philadelphia shall have the exclusive right to do business in the following territory:

"Pennsylvania, New Jersey, Delaware, Maryland, Louisiana, Georgia, Florida, Alabama, North Carolina, South Carolina, Virginia, West Virginia, Tennessee, District of Columbia, Kentucky, Mississippi, New York City and the five boroughs.

"(c) Reciprocal dealers and exporters in New York State, New York City and the five boroughs, may be sold by Boston and Philadelphia. Where chains and buying offices are sold by either Boston or Philadelphia, the place of the buying office shall determine the territory in which the chain operates.

"(d) All territories not hereinabove specified shall be open to both companies.

"(e) Neither Boston nor Philadelphia shall make any sales, either directly or indirectly, through distributors or affiliates in the territory allocated exclusively to the other company."

The language of paragraph 5(e) indicates that paragraphs 5(a) and (b) were restricted to sales and did not concern purchases. The emphasis on sales only is also evident in the words used in paragraph 5(c). This construction is reinforced by the practice followed by the parties after execution of the contract in making purchases in the area exclusively assigned to each other (N.T. 202–3). The president of defendant testified at N.T. 84: "when you are regarding purchases, we bought from any one * * * every one, as far as purchases were concerned." The jointly-owned truck picked up purchases for each party in the territory assigned to the other in the above-quoted 5(a) and (b) during the period 1954–1958 with full knowledge of both parties (N.T. 199–200).

Also, paragraphs 5(a) and (b) were designed to allocate areas in which the two companies could continue to make sales under their common trademark (N.T. 164–5, 197). The general counsel for plaintiff (Mr. Ritvo), at N.T. 211–215, testified that this language in the contract only referred to sales to be made in the described areas. The president of defendant testified at N.T. 234 ff. that there never was any discussion that "doing business," as used in paragraph 5, included purchases. The general counsel for defendant at the time the contract was drafted did not testify (N.T. 238 ff.) to the contrary and stated that the phrase "do business" was not used as a word of art but "to describe whatever the parties between themselves understood 'doing business' meant."

The purchase of rebuildable units is a vital part of the business of both parties and it is frequently necessary to make sales without profit to suppliers of such units [6] in order to secure necessary supplies. These sales sometimes take the form of exchanges for rebuildable units

---

**6.** The following sentences from the answer to defendant's interrogatory 8 (page 3 of Document No. 7) were received in evidence at N. T. 162–3:

"Vital to the business is both access to sources of supply of used units forming the raw material for manufacturing and customer lists of the jobbers doing busi-

or accommodation sales without profit. Such transactions were made by both parties after the effective date of the contract marked Exhibit A (N.T. 73 concerning Automotive Rebuilders Supply Co., N.T. 56 concerning Shassets, N.T. 127 ff., N.T. 154–61). The language of paragraph 5 was not intended to, and does not apply to such transactions. The transactions of plaintiff with these companies, which were not customers of defendant, fall in this category:

Cardo Automotive Products, Inc. (see stipulation, being Document No. 11, N.T. 127, 133–4, 142, 156, 186, P–10, 203–4)

Kimco Auto Products, Memphis, Tenn.[7] (N.T. 154 ff.)

Eastern Warehouse Service, Inc., New York City (see Document No. 11, N.T. 155, 160, 193, 203–4)

On this record, the construction of these paragraphs reached above is required. See Foulke v. Miller, 1955, 381 Pa. 587, 593–595, 112 A.2d 124.

B. The term of paragraphs 5 and 6 of the contract attached as Exhibit A to the Complaint is as long as the parties use the names or trademarks specified in paragraph 6.

Paragraph 6 of Exhibit A provides:

"6. Boston shall have the right to use 'Automotive Devices Co.' and 'Automotive Devices Co. of Springfield'. Philadelphia shall have the right to use 'Automotive Devices Co. of Pennsylvania'. Both companies shall have the right to use the trademark 'ADCO', even though both marks be maintained in the identical character as they now exist."

The limitations on competition in paragraph 5 were designed to protect companies previously operated by the same management in their right to the use of their common trademark and name in the areas in which they had previously been conducting their businesses (N.T. 164–5, cf. N.T. 244–5). The importance of the limitation to both parties contained in these paragraphs is shown by the language of the release of 12/11/58, terminating the provisions of Exhibit A, which specifically excepted from such termination "only paragraphs 5 and 6 of an Agreement dated the 4th day of October, 1954, entered into by, between and among the parties hereto and Samuel Sooper and Reuben Lipsky, being an agreement effecting the separation of first and second parties, it being the intention that the undertakings in said paragraphs 5 and 6 of said Agreement shall remain in full force and effect." (P–2). At that time, defendant's counsel advised it that paragraphs 5 and 6 continued in force under the same terms as in the past (N.T. 244). Such a limitation, which is no greater than required for the mutual benefit of both parties and is restricted as to area, though unlimited in time,[8] is valid. See Harris Calorific Co. v. Marra, 1942, 345 Pa. 464, 468 ff., 29 A.2d 64 and other authorities cited at pages 9–14 of plaintiff's Brief (Document No. 18).

C. The phrase "metropolitan New York City area" in 5(a) of Exhibit A includes relatively large Nassau County communities such as Hicksville, Long Beach and Port Washington near the boundary line between Brooklyn and Nassau County.

Although the record is far from definite on the meaning of this phrase, the trial judge finds it includes relatively large Nassau County communities, such as Hicksville, Long Beach, and Port Washington near the boundary line between Brooklyn and Nassau County.

---

ness in the field. In many cases these persons were the same since a large portion of the business volume done is on a so-called 'exchange' basis, with an old but rebuildable unit being returned for credit at the time the rebuilt unit is sold." See, also, N. T. 134, 142, 186.

7. These sales were of a part of a water pump and not of a rebuilt unit (N. T. 156).

8. Defendant's contention that the term of the contract has necessarily expired is contrary to such cases as Sklaroff v. Sklaroff, 1919, 263 Pa. 421, 106 A. 793; Holland v. Brown, 1931, 304 Pa.

This construction is consistent with the description of "metropolitan New York City" by the U. S. Bureau of the Budget.[9] This conclusion contemplates that either party may make sales in such communities in Nassau County as the above-named towns.

D. Plaintiff has not sustained its burden of showing irreparable damage.

Of the six customers on Exhibit P–1 to whom defendant has been making sales in violation of the contract, four of them are located in parts of New York State where plaintiff has made no attempt to obtain or service customers or use its name or mark, so that there is no evidence of irreparable damage resulting from those sales. There has been a reasonable ground for doubt as to the continuing validity of Sections 5 and 6 of the contract, so that there is no reason to believe that defendant will not promptly terminate its sales to the two customers on Exhibit P–1, who are located in Providence, R. I.[10] Also, the record indicates that defendant only solicited Globe Auto Company of Providence on one occasion in March 1959 (N.T. 56–58) and there is no reason to believe that it will resume such solicitation after this document is filed. Plaintiff's president has testified that the parties are not competing with each other at this time (N.T. 168). Under these unusual circumstances contained in the record, the plaintiff

has not sustained its burden of proving irreparable damage.

IV. *Conclusions of Law*

The trial judge makes the following Conclusions of Law:

A. The court has jurisdiction over the subject matter of, and the parties to, this action.

B. Sections 5 and 6 of the contract attached to the Complaint as Exhibit A are binding on the parties, legal and enforcible for the term stated in III–B above.

C. Defendant has violated the terms of the sections mentioned in paragraph B above in making sales to the business concerns listed on Exhibit P–1, other than the four concerns to the left of which a checkmark (√) appears on P–1, in soliciting sales in plaintiff's exclusive area and in permitting Adco Warehouse of Baltimore, Maryland, to use the trade name "ADCO" (N.T. 71–72).

D. Plaintiff has not sustained its burden of showing irreparable damage.

E. The Conclusions of Law contained in the foregoing Discussion (III) are adopted as Conclusions of Law of the court.

F. Plaintiff is not entitled to injunctive relief.[11]

An order may be submitted in accordance with the foregoing Conclusions of Law.

---

545, 156 A. 168; cf. P.L.E. Contracts § 185. Illustration 4 of § 2 of the Restatement of Contracts, cited by defendant, is inapplicable since it concerns the time of performance of a contract to sell specified goods.

9. A publication entitled "Standard Metropolitan Statistical Areas," published by the U. S. Bureau of the Budget in June 1959, includes Nassau County within the definition of "metropolitan New York City." At page 1 of a companion publication entitled "Criteria for Defining Standard Metropolitan Areas" and published by the U. S. Department of Statistical Standards in March 1958, it is stated that the county unit concept is inexact insofar as it includes a considerable amount of territory which will not ordinarily be considered in a "metropolitan area." However, it appears to be within the economic scope of this study to include communities of the size of the above towns in "metropolitan New York City," even though the open areas of Nassau County are not ideally includible in that phrase.

10. If it does not follow this course, plaintiff may renew its application for injunctive relief.

11. In the event that it may further amplify the above Conclusions, the trial judge would answer these legal questions "yes": 1, 2, 4, 10, 12, 13, 16, 20, 21, 22, 23 as to one customer, 24, 27, 28, 29 and 45. The trial judge would answer these legal questions "no": 8, 9, 15, 17–19, 25, 26, 32, 33 and 41. The legal questions are Documents Nos. 14 and 16 in the Clerk's file.