## Histand v. Nagorski

*Ward F. Clark*, for plaintiff.
*Robert W. Valimont*, for defendant.

SATTERTHWAITE, P. J. (Seventh District, Specially Presiding), September 11, 1964.—By this equity action plaintiff, proprietor of a barbershop, seeks injunctive relief and monetary damages against defendant, formerly employed as a barber in plaintiff's shop, by reason of defendant's violation of a noncompetition covenant.

Pleadings presently relevant consist of plaintiff's amended complaint, defendant's answer thereto containing new matter, and plaintiff's reply to the latter. The amended complaint alleged an oral agreement between the parties on or about December 8, 1959, whereby it was agreed that defendant would attend a particular barber school and enter plaintiff's employ as an apprentice barber at a specified contemplated pay scale, working in plaintiff's shop on two evenings per week and on Saturdays while still attending barber school and five days per week upon graduation therefrom; and whereby it was further agreed that plaintiff would additionally provide defendant with supplementary instruction and training as a barber and would loan defendant the sum of $137.20, to be applied to the fees and charges of the barber school and repaid under terms to be agreed upon after defendant became employed; and whereby it was still further agreed that if defendant terminated his employment with plaintiff he would not enter the barbering profession within five miles of plaintiff's shop for a period of ten years from said date of December 8, 1959. The amended complaint further alleged that the parties also agreed that the aspects of their verbal understanding relating to the loan and to the noncompetition covenant should be (and were) reduced to an executed written document; that all conditions precedent under the contract had been performed or had occurred; that on June 24, 1963, defendant terminated his employment with plaintiff and on July 9, 1963, in violation

of the noncompetition covenant, opened his own shop and commenced business as a barber at the Plumstead Shopping Center, less than five miles from plaintiff's shop; that defendant's activities in the latter connection have caused and threatened to continue to cause irreparable damage to plaintiff's goodwill; that plaintiff's remedy at law was inadequate; that accordingly defendant should be enjoined from engaging in barbering within five miles of plaintiff's place of business until December 8, 1969; and that damages and an accounting should also be awarded.

Defendant's answer and new matter admitted the fact of plaintiff's loan of $137.20 to defendant for the purpose of paying the barber school fees and the further fact that the parties had agreed upon and executed the writing of December 8, 1959, but denied the other features alleged by plaintiff to have been orally agreed on or about that date. Defendant's pleaded position was that the conversations between the parties at that time amounted to no more than preliminary discussions of defendant's independently determined purpose to become a barber, he being previously untrained and unskilled in that profession, his intention to attend barber school, and the tentative possibility of his future employment, pay scale, hours, and the like, after he had been licensed; that no contract of employment in fact did exist until August, 1960 when defendant had successfully completed barber school and was engaged by plaintiff as an apprentice barber. Defendant further alleged that the writing of December 8, 1959, constituted the sole agreement subsisting between the parties as of that date; that said covenant was "abrogated" or modified by the subsequent (and only) employment contract between the parties of August, 1960, which was not attended by any noncompetition clause; that on December 8, 1959, plaintiff and defendant could not lawfully have entered into an agreement

of employment since the latter was not then certified as an apprentice or licensed barber as required by law; that the written agreement of that date was merely a contract of loan, and no employment contract then existed; that the termination of defendant's subsequent employment by plaintiff as of June 24, 1963, although admitted, was not voluntary on defendant's part in that he had earlier been informed that plaintiff intended to discharge him and had already secured another to fill his place; that defendant had entered into obligations for rent and costs of utilities under a two year's lease as of July 1, 1963 for his new shop in the Plumstead Shopping Center, and had incurred other expenses in equipping the same; that he had assumed such obligations, and in fact had originally been induced to execute the writing of December 8, 1959, by reason of and in reliance upon plaintiff's contemporaneous representation "that such covenant against competition was not legal or enforceable"; that said clause was legally invalid for lack of consideration, for vagueness under the barbering licensing laws if considered as an employment contract, for lack of any contemporary and valid employment contract, and for illegality as an unlawful restraint of trade in that the five-miles geographic and 10-years time limitations thereof were unnecessary, excessive and unreasonable.

Plaintiff's reply denied many of the allegations of defendant's new matter and disclaimed knowledge and demanded proof of others. A large number of the manifold collateral issues ostensibly raised by the pleadings, however, have become moot, as the case actually developed, either for lack of proof to substantiate the same, or because of the error or immateriality of certain of the legal propositions upon which the relevancy of certain of these factually disputed aspects was premised.

Two hearings to take testimony have been held by

the chancellor. The first was shortly after the filing of the original complaint and before defendant's answer thereto; it was occasioned by plaintiff's demand for a preliminary injunction. Such extraordinary interim relief was refused without prejudice to the ultimate merits. A subsequent full hearing was held in due course after the pleadings had been closed. Both sides thereafter submitted requests for findings of fact and conclusions of law, as well as briefs of argument. Upon due consideration of the transcript of the hearings and the requests and arguments of the respective parties, the chancellor makes the following

FINDINGS OF FACT

1. Plaintiff is, and since 1951 at all times material hereto has been, a duly licensed and registered barber and the proprietor of a multi-chaired business known as Histand's Drive-In Barbershop, at 610 Easton Road (Route 611), Doylestown; said shop is located in the Cross Keys section some distance north of the business center of Doylestown, near the intersection of Routes 611 and 313.

2. Plaintiff and defendant, at a time shortly prior to December 8, 1959 and after preliminary discussions, entered into an oral agreement or mutual understanding looking toward defendant's qualification as a barber, he then having no training or experience as such, pursuant to which he would take up the trade under plaintiff's tutelage. In effectuation thereof, defendant agreed that he would enroll and attend as a student in a barbering school, would become employed in plaintiff's shop (parttime while completing the school curriculum and fulltime thereafter, at compensation based on a sliding-scale fraction of the gross receipts attributable to his services therein) and, immediately relevant here, would not engage in the barbering trade as either a proprietor or an employe for 10 years from the date of their agreement at a loca-

tion within five miles of plaintiff's shop. Plaintiff thereby agreed to loan to defendant the sum of $125, later increased to $137.20, on account of the latter's expenses at barbering school, to be repaid without interest as later mutually agreed when defendant became employed, and that he would engage defendant in his shop and supervise and provide additional training and experience therein.

3. The parties by mutual understanding reduced portions of their oral agreement to writing by a memorandum executed on December 8, 1959, the text of which provided as follows:

"WHEREAS Nagorski is desirous of attending the Tri-City Barber College for the purpose of learning the barbering profession; and

"WHEREAS Histand is desirous of obtaining the services of Nagorski in his barber shop;

"IT IS MUTUALLY AGREED between the parties hereto that:

"(1) Histand will lend Nagorski $125 as security for which Nagorski will sign a judgment note.

"(2) Nagorski agrees not to carry on the profession of a barber, whether as a proprietor or employee of another, directly or indirectly, within five miles of Histand's Barber Shop for the period of ten years from the signing of this Agreement."

Both parties signed this writing under seal, and the testimonium clause thereof specifically stated that they had executed the same "intending to be legally bound thereby."

4. No sufficient credible evidence was introduced to sustain defendant's contention that plaintiff induced defendant to execute the foregoing writing by expressing the opinion that it was not valid or binding in law, or that, in any event, defendant actually relied upon any such statement, even if made, in executing the

same or in taking any subsequent action on his part to which the same was relevant.

5. On or about December 10, 1959, defendant did commence his attendance and instruction at the barbering school, successfully completing the requirements for graduation therefrom in August of 1960. Plaintiff did loan the sum of $137.20 to defendant for this purpose, which loan was later repaid in full by defendant to plaintiff.

6. Commencing at about the time of the Christmas holidays of 1959, defendant, having been duly registered as an apprentice and student barber with the State Board of Barber Examiners, entered plaintiff's employ as such, working while still in attendance at the barbering school during specified evenings and on Saturdays, and upon his graduation therefrom on a full five-day-week basis. During such employment he was compensated in accordance with the aforesaid oral understanding between the parties, and no new or superseding agreement relative to the terms of his employment was ever entered into.

7. During the early months of defendant's employment, plaintiff devoted considerable of his own time to close supervision and training of defendant's activities in the shop, furnishing practical suggestions and oversight (including instruction in a more speedy and efficient technique of the use of clippers, a process claimed to have been developed by plaintiff personally) over and beyond the instruction which defendant was receiving at the barbering school.

8. In the spring of 1962, after one previous failure, defendant successfully completed the examinations of the State Board of Barber Examiners and became fully licensed as a registered barber; from that time, he was and is a skilled, capable and experienced barber.

9. Despite increasingly evident manifestations of

estrangement between the parties arising out of personality and other disagreements between them, defendant continued in plaintiff's employ until June 24, 1963. On June 22, 1963, defendant gave plaintiff notice that he intended to leave his employment one week later; on June 24, 1963, plaintiff terminated defendant's employment forthwith.

10. For some months prior to the latter dates, defendant had contemplated employment elsewhere. In May of 1963 he entered into a written lease for a term of two years for space in the Plumstead Shopping Center in which he proposed to open his own barber shop as a proprietor.

11. The Plumstead Shopping Center is located in the southern part of the village of Plumsteadville at a distance of 4.2 miles north along Route 611 from plaintiff's shop at Cross Keys.

12. Defendant opened his new shop for business at the Plumstead Shopping Center under the name "Dave's Barber Shop" on July 9, 1963, and has continued the barbering trade at that shop, with one other barber employe, to the time of the hearings in the within proceeding.

13. Plaintiff was and is the proprietor of the largest barber shop in the Doylestown area, serving approximately 1500 patrons per month, and having three or four employes operating as barbers therein. The bulk of his clientele comes from Doylestown Borough and Township; he also serves a regular but lesser number of patrons, some residing within as well as beyond a five miles radius of his shop, from the neighboring townships of Plumstead, Buckingham, Hilltown and Bedminster and has established customers from such even more removed communities as Riegelsville, Quakertown, Newtown, New Hope, Chalfont, Pipersville, Plumsteadville, and even occasionally from Frenchtown and Lambertville, New Jersey.

14. Prior to the opening of defendant's shop at the Plumstead Shopping Center, there was no barber shop to the north along Route 611 from plaintiff's place of business to the Borough of Riegelsville, a distance of approximately twenty miles, nor to the northwest along Route 313 to the Borough of Dublin, a distance of about six miles, nor to the east along Routes 313 and 202 to the Village of Buckingham, a distance of four or five miles.

15. The bulk of defendant's trade since the opening of his shop at the Plumstead Shopping Center comes from the Village of Plumsteadville and areas north and east thereof in Plumstead, Bedminster, Tinicum and Nockamixon Townships and the Village of Point Pleasant. The number of his patrons does not appear in the record.

## DISCUSSION

On the merits of the ultimate question which is controlling in the within proceedings, to wit, the enforceability of the noncompetition covenant under policy considerations of the law as related to contracts having features of restraint of trade or employment, the significant legal principles are well established and subject to little difficulty of statement as such. A contractual obligation, ancillary to an employment relationship, whereby the employe agrees not to compete with the employer after termination of his employment, is prima facie valid and enforcible, notwithstanding that in nature it is in restraint of trade, if it is reasonably limited as to duration of time and geographical extent; it is regarded as so reasonably limited if, when properly construed, it be considered as confined in restrictive application within such territory and during such time as may be reasonably necessary for the protection of the employer without imposing undue hardship on the employe: Harris Calorific Company v. Marra, 345 Pa. 464; Plunkett

Chemical Company v. Reeve, 373 Pa. 513; Seligman & Latz of Pittsburgh, Inc. v. Vernillo, 382 Pa. 161; Morgan's Home Equipment Corp. v. Martucci, 390 Pa. 618; Pennsylvania Funds Corporation v. Vogel, 399 Pa. 1; Pankas v. Bell, 413 Pa. 494; Fatzinger v. De-Long, 10 D. & C. 2d 53; Losman v. Obritz, 25 D. & C. 2d 484; F. G. Okie, Incorporated v. Attaway, 31 D. & C. 2d 173; Liberty Mutual Insurance Company v. Millham, 33 D. & C. 2d 97; Restatement of Contracts, §515, 516 (f) ; Annotations, 41 A. L. R. 2d 15, 43 A. L. R. 2d 94.

In order to avoid the interdiction of the general policy of the law prohibiting contracts in restraint of trade, the restriction must, of course, be "ancillary", either to a transfer of the property and good will of the subject enterprise, or to a factually existing employment relationship: Section 515 (e) of the Restatement, Contracts. However, the employment status need not itself be the consideration for the employe's agreement not to compete; all that the law requires in this connection, assuming that principles of general contract law relating to the necessity and sufficiency of consideration be met, is that the agreement not to compete be "ancillary" to the "principal transaction", i.e., the employment relationship: Morgan's Home Equipment Corp. v. Martucci, supra, 390 Pa. at 629-30, footnote 13. The burden of proof of illegality for unreasonableness in these connections lies upon the party so asserting: Harris Calorific Company v. Marra, supra. Since a general covenant not to compete would usually impose a greater hardship upon an individual employe than upon the seller of an established business a noncompetition covenant related to a contract of employment will be subjected to a more stringent test of reasonableness than that which the law would apply to such a restriction which is incident to the sale of a business: Morgan's Home Equipment Corp.

v. Martucci, supra, 390 Pa. at 631-632; Restatement, Contracts, §515 (b).

Prior to any analysis and consideration of the above principles as applied to the facts of the within case, it is necessary to make brief reference to certain collateral matters which either are not in substantial dispute or are of no legal significance in any event, but the ostensible, yet unrealistic, regard for which, both in the pleadings and at the trial, has unduly lengthened the record of testimony herein and tended to pose immaterial and incidental side problems which somewhat obscure the real merits of the litigation.

A considerable part of the defense pleaded in defendant's answer is no longer in the case for lack of evidential foundation at the trial. As noted in the chancellor's summarization of defendant's pleading at the outset of this adjudication, one of the fundamental pre-trial contentions was that no employment relationship subsisted, or legally could have subsisted, between the parties prior to August of 1960, and that therefore the noncompetition covenant of December 8, 1959, was invalid because it was independent of and not founded upon an employer-employe status. In addition, defendant also asserted in his answer that the parties' initial agreement containing the restrictive clause in suit was invalid not only for absence or failure of consideration, but also because of misrepresentations by plaintiff as to the significance and effect thereof; he further contended therein that the original understanding of the parties, whatever it may have been and regardless of its legal sufficiency, was abrogated and superseded by a new employment engagement in August of 1960.

The evidence adduced at the hearings, however, demonstrated that the various ramifications of these sundry positions are totally lacking in either factual or legal merit. All of the testimony, including that of

defendant himself, indicates that on or prior to December 8, 1959, the parties not only had had tentative discussions, but also had arrived at an actual and substantially full and complete meeting of the minds on the various subjects involved. They admittedly had so agreed, not only to the loan and noncompetition covenant, but also that defendant, being desirous of entering the barbering trade and with no prior experience or training therein, would enroll in a barbering school, and would serve in plaintiff's shop on the pay scale discussed, part-time while attending school and later full time until and after fully licensed; and, conversely, that plaintiff would so engage him, would supervise his apprenticeship and would give him on-the-job training and instruction. The evidence further indicates, with no dispute whatsoever, that the various aspects of the whole situation so understood were in fact fully carried into effect in all of the details mentioned. Still further, the record is totally silent as to any new or revised understanding between the parties in August of 1960 or at any other time. Defendant's employment by plaintiff continued after his graduation from barbering school under the same terms as originally agreed, the increased compensation rate contemplated by their understanding of December 1959 going into effect when he then became employed on a full time basis.

Defendant's objection attempting to invoke the parol evidence rule against the introduction of evidence as to the parties' oral agreements not contained within the writing of December 8, 1959, was properly overruled. That document, on the very face thereof, quite patently did not set forth the whole, or even any substantial part, of the terms of the employment relationship itself which admittedly was then agreed upon and which did come into actual effect shortly thereafter. Evidence of their conversations as to the

terms of the latter was offered and received, not to alter, vary or contradict the writing, but to permit determination of their actual, mutual and complete understanding, as to which the document alone was silent or inadequate. Where it appears, as here, that the writing in question did not embody, nor was it intended to embody, the whole of the parties' agreements, the parol evidence rule has no application: Rosenfeld v. Rosenfeld, 390 Pa. 39; Rubin v. Lustro Tile Products Corp., 411 Pa. 549; compare Morgan's Home Equipment Corp. v. Martucci, supra, 390 Pa. at 629-630, footnote 13.

Moreover, no taint of illegality affected the employment relationship by reason of the fact that the parties had agreed in December 1959, that defendant was to receive (and he in fact did later receive) compensation in the form of an agreed percentage of the gross receipts from patrons served at his assigned chair in plaintiff's shop during his status as an apprentice barber and before he had completed the requirements to be fully licensed as a barber by the State Board of Barber Examiners under the Act of June 19, 1931, P. L. 589, as amended, 63 PS §551, et seq. While it is true that under section 3 of that Act, 63 PS §553, as amended by the Act of June 5, 1937, P. L. 1689, neither a student nor an apprentice barber might receive wages as such, nevertheless, by the Act of July 19, 1951, P. L. 1134, apprentices were removed, as expressly stated in the title of the amendatory Act of 1951, from such limitation. Defendant, accordingly, at the times presently relevant might have been, and was, legally employed and compensated as an apprentice in plaintiff's shop, he having been duly registered, apparently as both a student and as an apprentice, prior to the actual commencement of his employment. The fact that he could not lawfully have been remunerated for his completely separate activities as

a practicing student at the barbering school is of no present significance.

No problems of absence or failure of consideration for the noncompetition covenant are involved. The documentation of this restriction was under seal (compare Pankas v. Bell, supra, 413 Pa. at 497, footnote 4), and the testimonium clause thereof contained an express statement that the parties had executed the same "intending to be legally bound" thereby: see the Uniform Written Obligations Act of May 13, 1927, P. L. 985, 33 PS §6; Losman v. Obritz, supra, 25 D. & C. 2d at 487. Moreover, the mutual and subsequently fully executed undertakings of the parties, including plaintiff's commitment to lend defendant the barbering school fees and to furnish both training and employment to defendant, quite apparently provided factually good and valuable consideration in any event.

The unnecessarily protracted testimony from both sides as to the background situation of a developing and progressively more strained relationship arising out of personality and other differences between the parties in the employment atmosphere, as well as in relation to the actual circumstances of defendant's termination of employment, in no sense was indicative of any failure of consideration or breach of contract on plaintiff's part. Their understanding included no provision for any definite term or time of duration of employment, and hence the latter was at will. Defendant, while making lengthy efforts in his testimony to show that plaintiff was more blameworthy for the incompatibility which developed during the course of their association, totally failed in evidential support of the intimation in his pleading that he had been wrongfully discharged. Concededly, he had voluntarily given notice of his intention to resign; plaintiff had merely accelerated the effective time thereof by discharging him before the end of that period of notice.

The whole record amply demonstrates that the severance of defendant from plaintiff's employ was by mutual agreement.

Nor does the record disclose any sufficient basis to sustain defendant's position that he had been imposed upon and had executed the noncompetition covenant, and later further acted in disregard thereof, with any realistic or justifiable reliance upon plaintiff's alleged expression of opinion that the clause was legally unenforcible, and that the parties in fact did not really intend it to be binding. Compare Fatzinger v. DeLong, supra, 10 D. & C. 2d at 58. While defendant did testify that he "seemed to remember" that plaintiff, at the time the parties signed the document of December 8, 1959, had stated "Now, I can't hold you to this, but we'll sign it anyway", defendant also admitted that he could not "swear" to the accuracy of this implausible recollection, and plaintiff categorically denied that the incident took place. In any event, and whatever may have been the conversations between the parties in this connection, defendant certainly cannot now be heard to say that he in fact relied thereon, either in executing the original writing or in subsequently opening his own shop. He admittedly realized from the very outset of their dealings that he would not have been employed and otherwise assisted by plaintiff in becoming a barber, had he refused to agree to this term of their arrangement, and he did so agree. Moreover, according to his own testimony, he did take the agreement seriously enough later to make informal inquiry of a lawyer as to the legal validity thereof. Still further, he professed that when he actually set up his new shop in the Plumstead Shopping Center, he subjectively believed that he had in fact complied with the distance provision of the restrictive provision, although he had no real basis for such belief.

In short, the chancellor is of the opinion that the

parties unquestionably entered into an ostensibly valid and binding initial contract, ancillary to an employment relationship which factually did come into existence; that such restrictive covenant was not subject to any infirmities attendant upon the execution thereof nor to any legalistic defenses, such as the absence or failure of consideration. The evidence furthermore unquestionably justifies the factual conclusions that defendant has violated the terms of that agreement and that plaintiff has fully performed all of the provisions of the understanding on his part which had provided the legal consideration therefor.

Turning to the only real problem presented after all the foregoing surplusage has been eliminated, to wit, the reasonableness of the terms of defendant's agreement not to compete with plaintiff, tested by the standards hereinabove outlined, the chancellor is not impressed by defendant's protestations of inadvertence in the fact of his violation or that he should be excused from compliance because of the rent and other obligations which he had assumed in connection with the opening of his shop at the Plumstead Shopping Center, both before and after terminating his employ with plaintiff. Defendant's own testimony indicates that for several months he had had the fully formed purpose to leave plaintiff and establish his own business without regard for any limitations which might have been contained in his solemn written agreement, of which he was fully conscious. When he did decide on the Plumsteadville location, he did not even take the trouble to determine the distance therefrom to plaintiff's shop, lamely professing to rely on a road sign located still further north along Route 611 which indicated that Doylestown was a distance of *six* miles south, and estimating, on a basis which is not disclosed by the record, that Cross Keys was about one mile north of that community. Although he claimed to have

informally consulted and been advised by a patron who was a lawyer that the latter "felt" that the non-competition covenant "wasn't really binding", nevertheless, he was also advised that he probably would be involved in a court proceeding if he did not comply. In sum, he took a calculated risk in disregarding his own contractual undertaking, and accordingly, any hardships which he may subsequently have incurred in themselves created no equities in his favor.

The chancellor also believes that the territorial extent of the five-mile radius limited by the agreement was not unreasonable. In light of the undenied evidence that plaintiff's established patronage included many customers from communities even much more distant, defendant has not borne the burden of persuasion that plaintiff's legally recognizable interest in preserving and maintaining customer contacts of his establishment did not geographically extend so far.

The 10-year time limitation, however, seems unreasonable, and for that reason alone the chancellor feels constrained to hold the covenant invalid and unenforceable. Several factors enter into this determination. In the first place, it should be noted that the period was contemplated to run, not from the termination of employment, but from a time prior to the inception thereof. From this circumstance, it might well be inferred that the real occasion and objective was not primarily to protect plaintiff from diversion of his established clientele, but rather to compel defendant's continued employment by plaintiff, and to permit plaintiff's participation in the productivity of defendant's increasingly more efficient activities in plaintiff's shop, until plaintiff had recouped a good return from his investment of time and money in defendant's original schooling and training. Indeed, the most impelling consequential effect of the clause in question arose at the very outset of the parties' relationship, at a time

when defendant's lack of experience and standing as a barber would offer the least threat of competition to plaintiff, and actually tended to decrease in significance as time went by, so that at the end of the ten years term, had he remained that long, when his skill had most fully developed and his personal ties with customers in plaintiff's shop had become the most prolonged, defendant could have left plaintiff's employ and taken his own personal patrons with him with no restriction whatsoever.

In other words, the sanction aspect of the time feature of the noncompetition covenant bears an inverse rather than a direct degree of significance and effect, and hence does not appear to have any necessary or sufficiently logical or reasonable relation, to the legally cognizable objective or purpose of protecting and preserving plaintiff's good will and established clientele. The chancellor has neither found nor been referred to any precedent for the proposition that the employer's purpose to coerce continued employment by an employe, otherwise employed at will, might reasonably be considered to sustain a progressively less purposeful noncompetition covenant, or that such an objective would provide a reasonable basis for an exception from the general premise that contracts in restraint of trade are illegal.

Secondly, the initial term of 10 years, or even the approximately six and one-half years thereof remaining when defendant left plaintiff's employ, amounted to an unduly protracted time limitation in itself and in any event under all the circumstances of the nature or type of the enterprise involved. The chancellor recognizes that the barbering trade is a personal service occupation and that the elements of personality, individual contact and habitual or preferential association which develop over a period of time between individual patrons and the respective employe-operators in the

shop, are factors not to be ignored. Nevertheless, and despite these considerations, such a lengthy restraint upon competition goes far beyond any reasonable necessity or occasion for protection of the proprietor's interest in safeguarding the established patronage of his shop. His regular customers, if they be such, would normally have occasion to avail of barbering services from him or someone else every second or third week, and not merely on sporadic and isolated occasions recurring only over annual or other remote periods. The duration of the instant prohibitory sanction against interference with plaintiff's relationship to his patrons in this connection is unrealistic and obviously far exceeds that which could just as effectively have realized such purpose under the circumstances.

Thirdly, although plaintiff undoubtedly furnished defendant with training, instruction and experience, and the benefits thereby conferred upon defendant form the basis and occasion for his present skill and ability as a barber which he did not have prior to his association with plaintiff, the fact remains that he now is committed to the barbering trade as a means of earning his livelihood. It does not follow that defendant could not have obtained such status through other connections, and even if it did, a detached and impartial balancing of the equities clearly demonstrates that the attempted deprivation of defendant's use of such skills and experience in this area for such a prolonged period of time would far outweigh the detriments sustained by plaintiff in contributing to his acquisition of such presently qualified status. Moreover, defendant's employment by plaintiff did not involve any significant trade secrets or practices which were peculiarly and individually pertinent to plaintiff's shop or which needed special and extended protection from disclosure. Plaintiff apparently did instruct defendant in a technique of hair-cutting through the more extensive

use of clippers than would usually be availed of in the barbering school or other shops, but no pretense was made at the hearings in the within case that this process amounted to a trade secret or was confidential information which defendant might not have learned elsewhere. After all, barbering, while a skilled and personalized occupation, is still only a trade and not a learned or intellectual profession requiring lengthy and scholarly preparation and preceptorship over a period of years, and does not involve either the acquisition or duty of nondisclosure of matters of insight, judgment and knowledge or other similar elements of specialized, confidential or peculiar application to the particular business. Compare the difference in result obtaining on contrasting considerations of this character in Morgan's Home Equipment Corp. v. Martucci, supra, and in Pennsylvania Funds Corporation v. Vogel, supra.

Finally, research has disclosed no precedent and counsel has pointed to none, which has sustained a covenant not to compete in this or any equivalent type of occupation or enterprise for a time even approaching the extended term of years here involved. The beauty shop operator cases, such as the Seligman & Latz, Pankas and Losman decisions, supra, are probably the most nearly analogous, and they in fact were concerned with more demanding considerations of confidential employment and trade secrets than here presented. None of them, however, involved a restrictive period of more than two years.

Plaintiff has anticipated the possibility that the within 10 years term might be held unreasonable, and has suggested that if that conclusion be reached the chancellor might and should interpret the clause in suit to provide for a time which could be considered reasonable, citing language from the Seligman & Latz opinion, supra, 382 Pa. at 165. Unfortunately for

plaintiff, however, the court has no power or authority to accommodate him in this respect. The language presently in question provides no occasion for the judicial resolution of any problem of interpretation or the application of any rules of construction to ambiguous contract terminology; the within covenant clearly and unequivocally stipulates a term of 10 years, no more and no less. The reference to Seligman & Latz accordingly is totally inappropriate. The time feature of the instant contract is indivisible and provides no possibility of judicial declaration of any alternative limitation. It is true that the law does permit the selective analysis of covenants not to compete where the terms permit such interpretation, enforcing and giving effect to valid provisions, and disregarding and eliminating invalid ones, *where they are severable*: Smith's Appeal, 113 Pa. 579, 590; Hanlon v. Morrissey, 58 D. & C. 133, 151; Niedland v. Schrenk, 6 D. & C. 2d 176, 182; see also the alternative grounds stated in Harris Calorific Company v. Marra, supra, 345 Pa. at 468.

But where, as here, the contract provisions are not capable of division, the court has no power, and, indeed, in the instant case would have absolutely no standards upon which it could undertake even if it might, to rewrite the parties' agreement for them: Anstey v. Wilson, 28 D. & C. 2d 695; Restatement, Contracts, §518, and comment (b) thereof.

### CONCLUSIONS OF LAW

1. On or shortly prior to December 8, 1959, plaintiff and defendant entered into a contractual relationship, partly but not wholly reduced to writing, which included a full and complete agreement between them as to, inter alia, defendant's employment by plaintiff shortly thereafter.

2. Evidence of the oral terms of said contract not incorporated in the writing was not precluded by the parol evidence rule.

3. The relationship between plaintiff and defendant as employer and employe contemplated by said contract did in fact come into existence under the terms thereof within a few weeks subsequent to the parties' arrival at such agreement, and continued without modification, revision or abrogation by any later agreement, until plaintiff and defendant by mutual agreement on June 24, 1963, terminated the employer-employe relationship.

4. Plaintiff on his part has fully performed all the terms and conditions of the aforesaid contract and has not breached the same.

5. The agreement of defendant not to compete with plaintiff within five miles for a period of 10 years from the date thereof, as contained in the writing was one of the constituent terms of said contract between plaintiff and defendant and was ancillary to said employer-employe relationship between them.

6. Said employer-employe relationship between plaintiff and defendant was not invalid or illegal under the licensing laws relating to the occupation of barbering.

7. Said noncompetition covenant by defendant was not invalid by reason of absence or failure of consideration.

8. Defendant has not complied with said noncompetition covenant in that within a period of approximately three years and six months from the date thereof and within a distance of 4.2 miles from plaintiff's place of business he opened and operated a barber shop on his own account as a proprietor.

9. Said noncompetition covenant was reasonably restricted in geographical extent.

10. Said noncompetition covenant was not reasonably restricted in time.

11. Said noncompetition covenant as a whole was an illegal restraint on trade in that its overall restrictive

application to defendant was excessive and not reasonably required for the protection of legally recognized proprietary interests of plaintiff in and about his barbering business.

12. The unreasonably restrictive time limitation of said noncompetition covenant is not divisible or separable, or capable of interpretation or construction as containing divisible or separable provisions.

13. Said noncompetition covenant is not legally valid or enforceable.

14. Plaintiff's respective prayers for relief should be denied and refused and judgment entered for defendant and against plaintiff.

15. Each party should pay his own costs.

### DECREE NISI

And now, September 11, 1964, for the reasons stated in the foregoing opinion, it is hereby ordered and decreed nisi that the respective prayers for relief of plaintiff's amended complaint are denied and refused, and judgment is entered in favor of defendant and against plaintiff, each party to pay his own costs.

This decree is entered as a decree nisi and shall become the final decree of the court unless exceptions be filed hereto within 20 days from this date.