369 A.2d 1164

JOHN G. BRYANT CO., INC. and Overhead
Materials Handling, Inc.

v.

SLING TESTING AND REPAIR, INC. and
William H. Crochiere, Appellants.

Supreme Court of Pennsylvania.

Argued April 10, 1975.

Decided Feb. 28, 1977.

2

4

Arthur L. Jenkins, Jr., Richard L. Grossman, Smith, Aker, Grossman, Hollinger & Jenkins, Norristown, for appellants.

Thomas J. Burke, Fred B. Fromhold, Ardmore, for appellees.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

OPINION OF THE COURT

NIX, Justice.

The instant appeal challenges the propriety of a Decree of the Chancellor granting a preliminary injunction to enforce a restrictive covenant in an employment agreement. William H. Crochiere, the individual appellant herein, accepted employment under an oral contract of employment with John G. Bryant Co., and Overhead Lifts Company in March 1963. The oral agreement of employment did not provide for a restrictive covenant not to compete. The two companies involved specialized in the field of selling and servicing of devices used in in-

dustrial material lifting. This is a highly technical field requiring specialized skills and methods of doing business. In June 1963 John Bryant, who was in fact the sole proprietor of the two companies, entered into two written employment contracts with Crochiere under which Crochiere was appointed as a sales representative for both companies. Each agreement provided that upon the termination of the employment, Crochiere would not engage in a competitive business within the sales territory of the two companies for a period of three years following the termination of employment. The sales territory was specifically defined and essentially included Eastern Pennsylvania, South Jersey and the State of Delaware. Thereafter, the Bryant Company and Overhead Materials Company, incorporated under the respective names of John G. Bryant Company, Inc., and Overhead Materials Handling, Inc., these corporations being the instant appellees. Following the incorporation in August of 1968, new agreements were entered into between the newly formed corporations and Crochiere essentially incorporating the terms of the 1963 agreements of employment.

On January 1, 1973, a third written agreement was entered into between the parties as a result of Crochiere's expressed desire to go into business on his own. The 1973 agreement provided that Crochiere would be permitted to form a company (to be designated Sling Testing and Repair, Inc.) and to solicit new business within the defined sales territory. However, Sling Testing and Repair, Inc. was prohibited from selling directly to established accounts of Bryant and Overhead Materials. The agreement specifically set forth the prohibited accounts which were customers of Bryant's and Overhead Materials' as of March 1, 1973. The agreement further provided that Crochiere would remain in the appellees' employ until February 28, 1973, at which time Bryant Company was to become the manufacturer's agent for

Crochiere's newly formed company and that Crochiere's company was to become sales agent for Overhead Materials. The term of this agreement was for a period of three years and was expressly binding on successors and assigns. Crochiere formed and incorporated a business under the name of Sling Testing and Repair, Inc. and had begun to engage in business. It is admitted on this record that Sling Testing made direct sales to accounts of appellees in violation of the 1973 agreement. Sling Testing is now defunct. However, Crochiere has undertaken a new corporate venture under the name of Sling Manufacturing, Inc., which engages in the same business as Sling Testing and Repair, Inc.

The appellees filed an action in equity requesting, inter alia, a preliminary injunction to restrain Crochiere and Sling Testing from continuing direct sales to those accounts protected under the covenant. After hearing, a Decree granting the preliminary injunction was entered on January 15, 1975, and an appeal to this Court followed.

The first question raised is the scope of our review in appeals from a Decree providing for a preliminary injunction enforcing an employee's covenant not to compete with his former employer and the essential prerequisites that must be shown to justify the issuance of the restraining order. This subject was discussed in our decision in *Albee Homes, Inc. v. Caddie Homes, Inc.*, 417 Pa. 177, 207 A.2d 768 (1965). There we observed:

"The scope of our review on an appeal from a decree either granting or denying a preliminary injunction is to examine the record only to determine if there were any *apparently reasonable grounds* for the action of the court below . . .." *Lindenfelser v. Lindenfelser*, 385 Pa. 342, 343–44, 123 A.2d 626, 627 (1956). (Emphasis supplied). *Summit Township v. Fennell*, 392 Pa. 313, 140 A.2d 789 (1958). *Alabama Binder & Chemical Corp. v. Pennsylvania Industrial Chemical*

*Corp.*, 410 Pa. 214, 215, 189 A.2d 180, 181 (1963). And the essential prerequisites for the issuance of a preliminary injunction are: first, that it is necessary to prevent immediate and irreparable harm which could not be compensated by damages; second, that greater injury would result by refusing it than by granting it; and third, that it properly restores the parties to their status as it existed immediately prior to the alleged wrongful conduct. *Alabama Binder & Chemical Corp. v. Pennsylvania Industrial Chemical Corp.*, supra. Even more essential, however, is the determination that the activity sought to be restrained is actionable, and that the injunction issued is reasonably suited to abate such activity. And unless the plaintiff's right is clear and the wrong is manifest, a preliminary injunction will not generally be awarded: *Keystone Guild, Inc. v. Pappas*, 399 Pa. 46, 159 A.2d 681 (1960), and *Herman v. Dixon*, 393 Pa. 33, 141 A.2d 576 (1958)."

*Id.* at 181, 207 A.2d at 770.

See also, *Sidco Paper Company v. Aaron*, 465 Pa. 586, 599-602, 351 A.2d 250, 257-58 (1976) and cases cited therein.

 Appellants argue that the record fails to establish irreparable harm. They note that appellees were only able to demonstrate actual damages in the amount of $427.00 in loss of commission and argue that this meager amount cannot possibly constitute irreparable harm. This reasoning however, ignores the nature of the violation herein involved. It is not the initial breach of a covenant which necessarily establishes the existence of irreparable harm but rather the threat of the unbridled continuation of the violation and the resultant incalculable damage to the former employer's business that constitutes the justification for equitable intervention.

This misconception is also reflected in appellants' further contention that their continued sales to accounts on

the prohibited list would not cause irreparable harm because of their agreement to maintain a record of earnings generated by such sales. It is asserted that since any loss would be ascertainable, it would be compensable in damages.

 The covenant seeks to prevent more than just the sales that might result by the prohibited contact but also the covenant is designed to prevent a disturbance in the relationship that has been established between appellees and their accounts through prior dealings. It is the possible consequences of this unwarranted interference with customer relationships that is unascertainable and not capable of being fully compensated by money damages. It is for this reason we noted in *Bettinger v. Carl Berke Associates, Inc.*, 455 Pa. 100, 103, 314 A.2d 296, 298 (1974), that where a covenant of this type meets the test of reasonableness, it is prima facie enforceable in equity. See also, *Jacobson & Company v. International Environment Corp.*, 427 Pa. 439, 452, 235 A.2d 612, 620 (1967). In *Sidco, supra,* we again recognize the employer's right to protect, by a covenant not to compete, interests in customer relationships that have been acquired through the efforts of the employee. There, quoting from Professor Blake, we described the nature of the interest as follows:

"In almost all commercial enterprises . . . contact with customers or clientele is a particularly sensitive aspect of the business. . . . In most businesses . . . as the size of the operation increases, selling and servicing activities must be at least in part decentralized and entrusted to employees whose financial interest in the business is limited to their compensation. The employer's sole or major contact with buyers is through these agents and the success or failure of the firm depends in part on their effectiveness. . . . [t]he possibility is present that the customer will regard, or come to regard, the attributes of the employee as more important in his business dealings

than any special qualities of the product or service of the employer, especially if the product is not greatly differentiated from others which are available. Thus, some customers may be persuaded, or even be very willing, to abandon the employer should the employee move to a competing organization or leave to set up a business of his own. . . .

"The employer's point of view is that the company's clientele is an asset of value which has been acquired by virtue of effort and expenditures over a period of time, and which should be protected as a form of property. Certainly, the argument goes, the employee should have no equity in the custom which the business had developed before he was employed. Similarly, under traditional agency concepts, any new business or improvement in customer relations attributable to him during his employment is for the sole benefit of the principal. This is what he is being paid to do. When he leaves the company he should no more be permitted to try to divert to his own benefit the product of his employment than to abscond with the company's cashbox." Blake, Employee Agreements Not to Compete, 73 Harv.L.Rev. 625, 653–54 (1960).

It is clear that the interest sought to be protected by the issuance of the preliminary injunction was that relationship which had been established on behalf of appellees' companies through the efforts of the former employee, Crochiere. This is clearly an interest which is incapable of adequate protection by monetary damages and the use of equitable relief is needed to avoid the threatened harm.

█ Our cases have made clear that equitable enforcement of post-employment restraints may only be enforceable where they are incident to an employment relation (i. e., ancillary to) between the parties to the covenant, that the restrictions be reasonably necessary for

the protection of the employer and that the restrictions are reasonably limited in duration and geographic extent. See, e. g., *Sidco Paper Company v. Aaron, supra; Kistler v. O'Brien,* 464 Pa. 475, 347 A.2d 311 (1975) ; *Jacobson & Company v. International Environment Corporation,* 427 Pa. 439, 235 A.2d 612 (1967); *Beneficial Finance Company of Lebanon v. Becker,* 422 Pa. 531, 222 A.2d 873 (1966). Appellant Crochiere contends that the covenant not to compete contained in the 1963 agreement, was not ancillary to his employment because it was not executed simultaneously with the initial commencement of employment. *Jacobson & Co. v. Int'l Environment Corp., supra; Beneficial Finance Co. of Lebanon v. Becker, supra.* The challenge to the ancillary nature of the covenant is founded on the fact that Crochiere became an employee by virtue of an oral agreement, prior to the first written contract containing the covenant. While recognizing the problem that would be presented if we were called upon to consider the propriety of injunctive relief based upon the 1963 agreement, we need not reach this question since it is clear that there is adequate support for the enforcement of the covenant set forth in the 1973 agreement.

In *Maintenance Specialties v. Gottus,* 455 Pa. 327, 330, 314 A.2d 279, 281 (1974), we had occasion to observe :

"[A] restrictive covenant is enforceable if supported by new consideration, either in the form of an initial employment contract or a change in the conditions of employment.

In the instant case, if appellee's employment status had changed beneficially when the parties reduced their agreement to writing, the law enunciated in *[Jacobson & Co., Inc. v. International Environment Corp., supra]* would dictate that the restrictive covenant, if reasonable, would be enforceable."

See also, *Kistler v. O'Brien, supra; Capitol Bakers, Inc. v. Townsend,* 426 Pa. 188, 231 A.2d 292 (1967); *Barb-Lee Mobile Frame Co. v. Hoot,* 416 Pa. 222, 206 A.2d 59 (1965); *Pennsylvania Funds Corporation v. Vogel,* 399 Pa. 1, 159 A.2d 472 (1960); *Morgan's Home Equipment Corporation v. Martucci,* 390 Pa. 618, 136 A.2d 838 (1957); *Srolowitz v. Roseman,* 263 Pa. 588, 107 A. 322 (1919). Under the 1973 agreement, a new relationship, at Crochiere's request and for his benefit, was created.[1] This post-employment covenant was clearly ancillary to that agreement and the mutual promises set forth therein provided the supportive consideration for the enforcement of the covenant. To argue that there was no subsequent change in Crochiere's employment status in 1973 ignores the facts of this case.

■ ■ Appellant Crochiere also contends that the geographic area proscribed by the 1973 contract was overbroad and unreasonable. The contract contained a list of approximately 560 established customer accounts as existed on March 1, 1973, to which Sling Testing could not directly sell. Crochiere insists that some of the corporate customers are so large that the effective area of restriction "span[s] the entire nation." The Chancellor correctly decided that the geographic extent of the agreement was necessarily limited by the two prior written contracts which were incorporated into the 1973 agreement. *Plunkett Chemical Company v. Reeve,* 373 Pa. 513, 95 A.2d 925 (1953). We therefore agree with his finding that the covenant not to compete was applicable

---

1. As noted by the Chancellor, there was consideration in the 1973 agreement to support the promise not to compete:
 "Consideration for the 1973 agreement is found in the lessening of the restrictions of the 1968 covenants resulting in Crochiere and the defendant corporation now being permitted to compete in plaintiff's territory for accounts not claimed by plaintiffs in the agreement. Secondly, Crochiere's employment status changed radically in that the 1973 agreement provided for his forming the defendant corporation with agency ties to the plaintiffs' well established businesses."

only to the limited area of Southern New Jersey, Eastern Pennsylvania and the State of Delaware. We further note that the clear intention of the parties was to limit the covenant to the geographic area specified in the 1968 agreement. The scope of the covenant therefore was not enlarged, but was in fact reduced. *Cf. Capitol Bakers, Inc. v. Townsend, supra.* Additionally, where any account on the list specified a particular office of the company, the restriction applied only to the named office or plant and did not extend to the other branches of the large corporation. *See Harris Calorific Co. v. Marra,* 345 Pa. 464, 29 A.2d 64 (1942).

In *Harris Calorific Co., supra,* the challenge to a restrictive covenant centered on a customers' list containing approximately 800 names of manufacturing companies. This Court held that a reasonable interpretation of the contractual agreement clearly required us to uphold the validity of the covenant. We stated:

"We are here dealing with a situation where under the admitted facts the business or trade of both parties extended beyond state lines and where the restriction if enforced would leave open to the defendant all territory in this or other countries outside a radius of approximately two hundred miles and also leave defendant free to sell his own tips to many customers even within that area. It follows that the restriction as to area is limited. Broader restrictions have frequently been held enforceable." *Supra* at 468, 29 A.2d at 67 (citations omitted).

■ The law is clear that the burden is on him who sets up unreasonableness as the basis of contractual illegality to show how and why it is unlawful. *Jacobson & Co., Inc. v. International Environment Corp., supra; Seligman & Latz of Pittsburgh v. Vernillo,* 382 Pa. 161, 114 A.2d 672 (1955); *Maxwell v. Schaefer,* 381 Pa. 13, 112 A.2d 69 (1955); *Plunkett Chemical Co. v. Reeve, supra;*

*Harris Calorific Co. v. Marra, supra.* Appellant has presented no evidence demonstrating to what extent the *total* alloy chain sling market has been restricted. Nor has he shown that he was unable to establish business relationships with companies not on the list although within the tri-state area. Thus, we find that appellant has failed to meet his burden of proving the 1973 covenant was unreasonable in territorial extent.

In a related argument, appellant questions the three year term of the 1973 contract as constituting an unreasonable time period for prohibiting sales. In the absence of any evidence to the contrary, we have no doubt that the duration of time of this covenant is entirely reasonable. The nature of the transactions in the materials lifting industry involves continuous but infrequent customer contact. Crochiere had been appellees' principal sales representative for ten years, personally servicing the numerous accounts. Under these circumstances, three years was reasonably necessary for the protection of the employers to strengthen and reaffirm their business contacts. *See, Jacobson & Co., Inc. v. International Environment Corp., supra,* 427 Pa. at 453, 235 A.2d 612; *Bettinger v. C. Berke Assoc., Inc., supra; Hayes v. Altman,* 424 Pa. 23, 225 A.2d 670 (1967); *Plunkett Chemical Co. v. Reeve, supra.* There is nothing present in this cause to suggest the covenant was in any manner an imposition of undue hardship on the employee. Restatement, Contracts, § 516(f) (1932); *Harris Calorific Co. v. Marra, supra.*

Similarly, we find no merit to the assertion that the restraint imposed on Crochiere was greater than required for the protection of appellees. It is not necessary that an employee receive specialized training before we enforce a restrictive covenant for the benefit of the employer. *Girard Investment Co. v. Bello,* 456 Pa. 220,

318 A.2d 718 (1974) ; *Hayes v. Altman, supra; Morgan's Home Equipment Corp. v. Martucci, supra.*

Thus, we find the restrictive covenant reasonably limited as to duration of time and geographical extent and is prima facie enforceable. *Jacobson & Co. v. International Environment Corp., supra,* 427 Pa. at 452, 235 A. 2d 612 ; *Barb-Lee Mobile Frame Co. v. Hoot, supra.*[2]

 Mr. Crochiere has also advanced the concomitant argument that the entire 1973 contract is unenforceable because it is allegedly an unlawful and illegal restraint of trade. Appellant asserts that this was an agreement between two independent contractors to divide the market in an effort to prohibit competition. We cannot agree. It is clear that the 1973 contract simply established Sling Testing as the sales agent for appellees, allowing Sling Testing to receive a commission on certain sales. Appellant has presented no evidence to warrant the suggestion that a monopoly was intended to be created or that antitrust laws were violated. *See Harris Calorific Co. v. Marra, supra.*

 Finally, appellant asserts that the preliminary injunction was erroneously granted against Sling Manufacturing, Inc., arguing that Sling Manufacturing, Inc. was never personally served with process[3] or substituted as a party defendant[4] in this action, and further, that

2. Appellant, Mr. Crochiere asserts that the 1973 covenant is not binding on him as an individual, because that provision specifically refers to Sling Testing as the party prohibited from engaging in direct sales. However, we must reasonably and realistically construe the contractual agreement. The contract incorporated the 1963 and 1968 agreements, in which Mr. Crochiere, as an individual, was a party. Furthermore, the 1973 contract was signed twice by Mr. Crochiere, once as an individual and also as president of Sling Testing and Repair, Inc. This contention is meritless. *Seligman & Latz of Pittsburgh, Inc. v. Vernillo,* 382 Pa. 161, 114 A.2d 672 (1955).

3. *See* Pa.R.C.P. 1504.

4. *See* Pa.R.C.P. 2351–2375.

the evidence failed to establish that Sling Manufacturing, Inc. was a successor in interest to any defendant in the action. Thus, appellant contends that the court below was without authority to enter the injunction against Sling Manufacturing, Inc.

These contentions, however, have not been properly raised in this Court, and our review would therefore be inappropriate. The only party aggrieved by the injunction against Sling Manufacturing, Inc. is the corporate entity: Sling Manufacturing, Inc. However, that entity has not appealed to this Court from the Chancellor's decree. In addition, our decisions have long recognized that standing to raise an issue on appeal lies only in those parties who have a "direct interest in the particular question litigated, [which is] immediate and pecuniary, and not a remote consequence of the judgment." *Keystone Raceway Corporation v. State Harness Racing Commission*, 405 Pa. 1, 8, 173 A.2d 97, 100 (1961). *See also Scientific Living, Inc. v. Hohensee*, 440 Pa. 280, 270 A.2d 216 (1970); *Ritter Finance Co., Inc. v. Myers*, 401 Pa. 467, 165 A.2d 246 (1960); *Elliot's Estate*, 388 Pa. 321, 131 A.2d 357 (1957); *Easton Transit Company's Petition*, 270 Pa. 136, 112 A. 917 (1921); Pa.R.App.P. 501. While the individual appellant, William A. Crochiere, as an officer and stockholder of Sling Manufacturing, Inc., may be said to have an interest in litigation affecting the corporation, his participation in this action is in a personal capacity and on behalf of Sling Testing. Since the record does not disclose that Crochiere was in any way authorized by Sling Manufacturing, Inc. to appeal on its behalf, and further, since it has not been established that he is a party "aggrieved" in the legal sense by the restraint on Sling Manufacturing, Inc., he is without the requisite standing to raise the issues asserted.

For this same reason, we note that although Sling Testing and Repair, Inc. was a named defendant in

this cause, and has appealed from the order below, it has not in any way been enjoined or restrained. The Chancellor's decree stated in pertinent part:

"Upon the entry of said security the defendants William H. Crochiere and Sling Manufacturing, Inc. *as successor to Sling Testing and Repair, Inc.*, are enjoined and restrained, until further order of this Court, from selling directly to accounts which as of March 1, 1973 were established accounts of plaintiffs as specifically listed in Annex "A" to the agreement between the parties dated January 1, 1973." (emphasis added).

It is clear from a plain reading of the decree that while Sling Testing and Repair, Inc. is referred to for the purpose of defining the status of Sling Manufacturing, Inc., the former entity is not bound by or subject to the decree. Under these circumstances, Sling Testing is not a party aggrieved by the decree.

*In re: Conveyance of Land Belonging to Dubois*, 461 Pa. 161, 335 A.2d 352 (1975); *Louden Hill Farm, Inc. v. Milk Control Commission*, 420 Pa. 548, 217 A.2d 735 (1966).

Decree affirmed. Each party bear own cost.

JONES, C. J., took no part in the consideration or decision in this case.

POMEROY, J., concurs in the result.