**MINNESOTA MINING AND MANUFACTURING COMPANY**

v.

**Jeffrey GESSNER.**

**No. Civ.A. 99–5717.**

United States District Court, E.D. Pennsylvania.

Dec. 10, 1999.

Heather A. Hoyt, Dechert, Price & Rhoads, Philadelphia, PA, for Minnesota Mining and Manufacturing Co.

Ronald J. Shaffer, Fox, Rothschild, Obrien & Frankel, LLP, Philadephia, PA, Michael D. O'Mara, Stradley, Ronon, Stevens & Young, Malvern, PA, for Jeffrey Gessner.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

ROBERT F. KELLY, District Judge.

Plaintiff, Minnesota Mining and Manufacturing Company ("3M"), seeks a prelim-

inary injunction to stop its former employee, Jeffrey Gessner, from working for the Avery Dennison Corporation ("Avery Dennison"). Plaintiff contends that Avery Dennison is one of its principal competitors and that defendant's actions are a violation of his Employee Agreement with 3M as well as a violation of the common law of trade secret misappropriation. Defendant was a Process Engineer in 3M's Box sealing tape Plant in Bristol, Pennsylvania, who, plaintiff contends, acquired from 3M during his employment, extremely valuable, proprietary and confidential trade secrets concerning 3M's manufacturing processes and compound formulations. 3M contends that defendant, if he is allowed to be employed by Avery Dennison, will be working on exactly the same type of adhesive coating processes he worked on for 3M. A Temporary Restraining Order was entered on November 24, 1999. A hearing was held on the request for a Preliminary Injunction on December 3, 1999. From the testimony taken at that time, the Court makes the following.

## FINDINGS OF FACT

1. Plaintiff 3M, a Delaware Corporation with its principal place of business in Minnesota, is a worldwide manufacturing company which markets its products and services throughout the United States and around the world.

2. Defendant Jeffrey Gessner is domiciled in and is a citizen of the Commonwealth of Pennsylvania. Defendant received a B.S. in Chemical Engineering from Drexel University in 1997 and started work at 3M on June 30, 1997 as a Process Engineer, reporting directly to Anthony Aulisa. At the inception of his employment with 3M, Gessner executed a 3M Employee Agreement, a true and correct copy of which is attached to Plaintiff's Complaint as Exhibit 1 and was identified at the December 3, 1999 preliminary injunction hearing as Exhibit P–1 (the "Employee Agreement"). 3M has paid Gessner a salary and benefits and given him access to 3M Confidential Information in consideration of his entering into to the Employee Agreement.

3. In the Employee Agreement at paragraph 5.F.c., Gessner agreed that for a period of two years after termination of his employment with 3M, he would not:

render, to any Conflicting Organization, services, directly or indirectly, in the United States or in any country in which 3M has a plant for manufacturing a product upon which I work during my employment with 3M or in which 3M provides a service in which I participate during my employment by 3M, except that I may accept employment with a large Conflicting Organization whose business is diversified (and which has separate and distinct divisions), and which as to part of its business is not a Conflicting Organization, provided 3M, prior to my accepting such employment, shall receive separate written assurances satisfactory to 3M from such Conflicting Organization and from me, that I will not render services directly or indirectly in connection with any Conflicting Product.

4. A Conflicting Organization is defined in paragraph 5 of the Employee Agreement as: "[A]ny person or organization which is engaged in or about to become engaged in, research on or development, production, marketing, leasing, selling or servicing of a Conflicting Product."

5. A Conflicting Product is defined in paragraph 4 of the Employee Agreement as:

[A]ny product, process, system or service of any person or organization other than 3M, in existence or under development, which is the same as or similar to or competes with, or has a usage allied to, a product, process, system or service upon which I work (in either a sales or non-sales capacity) during the last three years of my employment by 3M, or about which I acquire Confidential Information.

6. The Employee Agreement provides that 3M will continue to pay the defendant's salary for up to 23 months if defendant is unable to obtain employment consistent with his abilities and education, within one month after the termination of his employment with 3M, solely because of the above-described non-compete provisions, so long as defendant searches for employment and reports to 3M monthly on his search. Paragraph 5.F.d.

7. The Employee Agreement also prohibits defendant from using or disclosing Confidential Information, as defined in the Agreement. Paragraph 5.B.

8. Defendant Gessner worked for 3M as a Process Engineer until May 1, 1999, when he was promoted to Advanced Process Engineer. Throughout his employment at 3M Gessner was based in 3M's Bristol, Pennsylvania facility, which develops and manufactures various types of pressure sensitive adhesive products, including an innovative new labeling product known as "Print and Apply." *See* Exhibit P–5 (Gessner presentation).

9. Plaintiff contends that defendant both worked on and obtained Confidential Information about 3M's Print and Apply product.

10. Because the Bristol facility is a 3M production and scale-up facility where a great deal of experimental work is done, plaintiff contends that Gessner was involved in and has detailed Confidential Information about the development of secret new 3M technologies which are not yet in use in other 3M plants.

11. On October 25, 1999, defendant signed an offer letter from Avery Dennison Corporation ("Avery Dennison"), thereby accepting a job with Avery Dennison as a Senior Process Engineer reporting to Dave Geier, Technical Manager. Exhibit D–4. Defendant did not inform 3M of his decision to accept this offer until October 28, 1999.

12. Defendant claimed in his resume which he provided to Avery Dennison as part of his interview process that he led "a team to build and design a new 'state of the art' Hot Melt Drop die." Exhibit P–11. Despite his own description of this die as "state of the art," defendant testified at the hearing that he disagrees with 3M's view as to what information is Confidential Information of 3M, and he believes that he is free to use many types of information which 3M deems confidential, including the 3M die designs on which defendant worked.

13. Defendant believes that much of the alleged Confidential Information he acquired from 3M is not Confidential Information, and therefore it is highly likely, if not inevitable, that Defendant will use and/or disclose such information at Avery Dennison, even if this Court orders him not to do so.

14. Avery Dennison is in direct competition with 3M for a contract with the United States Postal Service to make rolled, linerless pressure sensitive adhesive postage stamps. It is alleged that Gessner has Confidential Information regarding the formulations and properties for the same adhesive and release coating which 3M uses in its rolled, linerless pressure sensitive adhesive postage stamps. In addition, it is alleged that Gessner worked on and has Confidential Information about 3M's secret formulations and processes for manufacturing a printable, rolled, linerless, pressure sensitive adhesive product, due to his work on the Novi printable tape and the Print and Apply labeling product. The technological barriers which must be overcome to manufacture such a printable product are similar, whether the end product is a printable tape, a rolled, linerless label or a rolled, linerless postage stamp— in each case, the manufacturer must devise an adhesive and a release coating which will permit the rolled product to unwind, but which will still permit the surface to accept and hold ink.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

2. This case is governed by Pennsylvania law.

3. 3M has demonstrated it is likely to prevail on the merits at the final hearing.

4. By accepting employment with Avery Dennison, defendant has threatened to cause and will, unless enjoined, cause irreparable injury to 3M. The breach of defendant's restrictive covenant and the misappropriation of confidential or trade secret information constitutes irreparable harm that warrants injunctive relief. *See Merrill Lynch, Pierce, Fenner & Smith v. Masri,* 1996 WL 283644, at *4–5 (E.D.Pa. May 28, 1996); *John G. Bryant Co. v. Sling Testing & Repair, Inc.,* 471 Pa. 1, 369 A.2d 1164, 1167 (1977); *Air Products and Chemicals, Inc. v. Johnson,* 296 Pa.Super. 405, 442 A.2d 1114 (1982).

5. Defendant will suffer no irreparable injury from the issuance of the injunction. Plaintiff will suffer greater harm if the requested preliminary injunction is not issued than defendant will suffer if it is issued.

6. The enforcement of defendant's Employee Agreement promotes the public good by protecting legitimate business interests. *See Hillard v. Medtronic, Inc.,* 910 F.Supp. 173, 179 (M.D.Pa.1995).

I, therefore, enter the following Order.

### *PRELIMINARY INJUNCTION ORDER*

AND NOW, this 10th day of Dec., 1999, upon consideration of Plaintiff's Motion for Preliminary Injunction and it appearing that: (a) plaintiff has a reasonable probability of eventual success on the merits; (b) plaintiff will suffer immediate and irreparable injury not compensable in damages unless a preliminary injunction is issued; (c) greater injury would result by refusing the request for injunctive relief than by granting such relief and (d) the public interest would not adversely be affected by the grant of relief, it is hereby ORDERED and DECREED that the Motion for Preliminary Injunction is GRANT-ED and, pending the final resolution of this case:

1. Defendant Jeffrey Gessner shall not, up to and including November 19, 2001, be employed by or render services, directly or indirectly, to Avery Dennison Corporation or any subsidiary of, affiliate of or other person acting in concert with Avery Dennison Corporation;

2. Defendant Jeffrey Gessner shall not use or disclose any trade secrets or other information not generally known, and proprietary to 3M, about 3M's processes and products, including information relating to research, development, manufacture, purchasing, accounting, engineering, marketing, merchandising, selling, leasing, servicing, finance and business systems and techniques, which was disclosed to him by 3M or to which he gained access while employed by 3M, whether originated by him or others.

3. In accordance with the provisions of Federal Rule of Civil Procedure 65(c), plaintiff is required to post security in the amount of $ 1,000.00.