J. A25008/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMPUTER AID, INC., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | No. 525 MDA 2016 |
| | : | |
| MARC FERREE AND QUIVADORE, LLC | : | |

Appeal from the Order Entered March 21, 2016,
in the Court of Common Pleas of Dauphin County
Civil Division at No. 2016 CV 1336 EQ

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN, J., AND STEVENS, P.J.E.*

MEMORANDUM BY FORD ELLIOTT, P.J.E.:    **FILED FEBRUARY 21, 2017**

Computer Aid, Inc. ("appellant"), appeals the March 21, 2016 order of the Court of Common Pleas of Dauphin County that denied its emergency motion for a preliminary injunction.

The procedural history and factual background, as set forth by the trial court, is as follows:

> **Procedural History**
>
> On February 18, 2016, [appellant] filed a Complaint and an Emergency Motion for a Preliminary Injunction. This Court scheduled a hearing on the Preliminary Injunction for March 2, [2016]. Following the hearing, this Court ordered briefs from both parties. They were received and reviewed and this Court denied the motion for preliminary injunction on March 21, [2016]. This Court received a timely notice of appeal on

---

\* Former Justice specially assigned to the Superior Court.

March 30, 2016, as well as a statement of errors complained of on appeal.

**Factual Background**

[Marc] Ferree worked for [a]ppellant as an employee of a subcontractor. As such, he signed a contract that included a non-solicitation agreement. The testimony at the hearing indicated that [Ferree] believed his contract was with his employer, while [a]ppellant contends the contract was with them. [Appellant] contends that [Ferree] is violating the agreement by taking a customer of [appellant's] -- PennDOT.

[Ferree] owns and operates [] Quivadore with his wife. In Dec. 2015, PennDOT terminated its contract with [appellant] and the new prime contractor is OST. [Appellant] did keep some work with PennDOT. Quivadore is subcontracted through OST and provides the same services that [Ferree] provided when he subcontracted through [appellant].

[Appellant] requests that [Ferree and Quivadore] be enjoined from further interactions and business with PennDOT until Dec. 31, 2016.

Trial court opinion, 4/19/16 at 1-2.

In the emergency motion for preliminary injunction, appellant alleged:

2. As stated in the Complaint, [] Ferree is violating the non-solicitation provision of a validly entered and legally binding "Computer Aid, Inc. Subcontractor Protection of Proprietary Materials Agreement" (the "Protection Agreement") by improperly taking a customer of [appellant's] – the Commonwealth of Pennsylvania, Department of Transportation ("PennDOT").

3. As described in the Complaint, [Ferree and Quivadore's] continued breach of the Protection Agreement has caused and will

continue to cause, irreparable harm which cannot be compensated by damages and which includes the loss of business goodwill, a customer and income, as set forth more fully in the Complaint.

4.  [] Ferree's actions have resulted in [appellant's] loss of work for specific computer consulting and programming services.

5.  As described in the Complaint, [appellant] has a protectable business interest in that it initiated and nurtured the relationship between [] Ferree and PennDOT and trained him on the technological requirements of the PennDOT job.

6.  [] Ferree's actions . . . are without justification and violative of the contractual provisions that do not permit him to solicit or take customers of [appellant's] within a year of termination of his subcontractor relationship with [appellant].

7.  [] Ferree operates through [] Quivadore, LLC. Injunctive relief should also apply to Quivadore to the same extent it would apply to [] Ferree, and [] Ferree should not be permitted to, indirectly through Quivadore, violate the terms of the Protection Agreement.

Plaintiff's Emergency Motion for Preliminary Injunction, 2/18/16 at 2, ¶¶ 2-7.

Following oral argument and the submission of briefs, the trial court denied the emergency motion for preliminary injunction:

[W]e determined that [appellant] did not face an immediate and irreparable harm that could not be adequately compensated by the awarding of monetary damages.

[Appellant] claimed loss of business goodwill, loss of a customer and loss of income. Taken in reverse order, loss of income is in fact loss of money

- 3 -

and can be remedied by monetary damages. Loss of a customer was not clear to us here. While [appellant] lost a "seat" to Quivadore and Ferree, [appellant] remains a PennDOT vendor. Further, [appellant] maintained the rest of its "seats" at PennDOT. Lastly, while loss of business goodwill is a non-monetary consideration, again we find no evidence that [appellant] actually lost any business goodwill. They remain a PennDOT vendor and no evidence was presented to show that PennDOT was in any way dissatisfied with [appellant's] work.

This one prerequisite was not fulfilled and as such we determined that [appellant] was not entitled to an emergency preliminary injunction.

Trial court opinion, 4/19/16 at 3-4.

On appeal, appellant raises the following issue for this court's review: "Did the lower court err in denying [appellant's] emergency motion for preliminary injunction where there was no reasonable basis for the lower court's holding that [appellant] did not prove immediate and irreparable harm which could not be adequately compensated in damages?" (Appellant's brief at 2 (capitalization omitted).)

At the outset, we note our standard of review from an order granting or denying a preliminary injunction:

A trial court has broad discretion to grant or deny a preliminary injunction. When reviewing a trial court's grant or refusal of a preliminary injunction, an appellate court does not inquire into the merits of the controversy, but rather examines only the record to ascertain whether any apparently reasonable grounds existed for the action of the court below. We may reverse if the trial court's ruling amounted to an abuse of discretion or a misapplication of law.

***WPNT, Inc. v. Secret Communication, Inc. t/d/b/a WDVE FM***, 661 A.2d 409, 410 (Pa.Super. 1995) (citations omitted).

Our supreme court has set forth the following prerequisites for a preliminary injunction:

> To obtain a preliminary injunction, a petitioner must establish that: (1) relief is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by money damages; (2) greater injury will occur from refusing to grant the injunction than from granting it; (3) the injunction will restore the parties to their status quo as it existed before the alleged wrongful conduct; (4) the petitioner is likely to prevail on the merits; (5) the injunction is reasonably suited to abate the offending activity; and (6) the public interest will not be harmed if the injunction is granted.

***Brayman Const. Corp. v. Com., Dept. of Transp.***, 13 A.3d 925, 935 (Pa. 2011).

Appellant contends that there was no reasonable basis for the trial court's denial of its emergency motion for a preliminary injunction because appellant proved immediate and irreparable harm which could not be adequately compensated in damages. Appellant argues that the trial court erred because it failed to consider relevant facts appropriate to an irreparable harm argument. Appellant specifically argues that the trial court erred when it focused on whether the loss of goodwill, the loss of a customer, and the loss of income represented the irreparable harm suffered by appellant when Ferree took the "slot" or "seat" at PennDOT under the auspices of Quivadore rather than appellant. Appellant asserts that the trial

court should have considered appellant's damaged relationship with PennDOT.

Michael Brion ("Brion"), account manager for appellant for the work Ferree did for PennDOT, testified that with respect to the staff augmentation contract, appellant had been the managing staffing provider for the Commonwealth which arranged for the hiring of individuals submitted by various vendors including appellant to fill the Commonwealth's needs. After January 1, 2016, appellant lost the contract as managing staffing provider but remained a vendor. (Notes of testimony, 3/2/16 at 9-13.) Brion explained that appellant had over 120 slots in staff augmentation at PennDOT and had lost one, Ferree's. (*Id.* at 34, 50.) Brion further explained that Ferree had a large portion of appellant's expertise on a critical application, such that Ferree's decision to leave E & E IT Consulting ("E & E"), the company with which he actually had an employment relationship, for Quivaadore injured appellant. (*Id.* at 55.)

The trial court concluded that this change did not constitute irreparable harm which could not be compensated for in money damages because appellant failed to establish that it lost a customer but rather just lost one "slot" at PennDOT.

This court discerns no abuse of discretion or misapplication of the law by the trial court. Appellant had already lost its position as prime contractor for the staff augmentation contract prior to Ferree's change. Appellant

remained a vendor in good standing to supply other "slots" to PennDOT through the new prime contractor, OST. While Ferree may or may not have violated the restrictive covenant, his actions associating himself with the new vendor, Quivadore, did not cause irreparable harm.[1] Even if there were irreparable harm, this court determines that the trial court did not

---

[1] For support, appellant cites **John G. Bryant Co., Inc. v. Sling Testing and Repair, Inc.**, 369 A.2d 1164 (Pa. 1977). In **Bryant**, our supreme court affirmed the grant of a preliminary injunction to enforce a restrictive covenant in an employment agreement. William H. Crochiere ("Crochiere") accepted employment as a sales representative with the John G. Bryant Company ("Bryant") and a related company that were in the business of selling and servicing devices that were used in industrial material lifting. Shortly after he began working, Crochiere signed employment agreements with the two companies which provided that, upon the termination of employment, Crochiere could not engage in a competitive business within the sales territory of Bryant for three years after the termination of employment. A subsequent agreement permitted Crochiere to solicit business for his new company within the sales territory but not with clients of Bryant. Crochiere violated this agreement by selling to Bryant customers. Bryant obtained an injunction. Crochier appealed to our supreme court which affirmed. **Id.**, 369 A.2d at 1165-1166.

The Pennsylvania Supreme Court reasoned that the breach of the agreement did not establish irreparable harm but it was the "threat of unbridled continuation of the violation and the resultant incalculable damage to the former employer's business that constitutes the justification for equitable intervention." **Id.**, 369 A.2d at 1167.

**Bryant** can be distinguished from the present case on the basis that it involved a non-competition clause in the context of an employment agreement where, in the present case, there was no employment contract between appellant and Ferree. A non-solicitation agreement is the basis for the alleged injunction here. Second, Ferree's action does not present a case of "unbridled continuation of the violation" because it only involves him changing his status with respect to PennDOT and not an attempt to obtain other "slots" that appellant controlled at PennDOT or otherwise damage appellant's business.

abuse its discretion when it determined that any damages could be calculated. Damages could be calculated based on the amount appellant would have received minus the amount it would have paid to E & E.[2]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/21/2017

---

[2] Although appellant argues that the trial court's analysis of loss of income and loss of a customer were not relevant to a determination of irreparable harm, appellant raised these items as reasons for why it suffered irreparable harm in its motion for injunctive relief.