J-A16012-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| PETRO'S BREAD DISTRIBUTORS, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GRETCHEN AUSTIN A/K/A | : | |
| GRETCHEN ALSTON | : | No. 2273 EDA 2021 |
| | : | |
| Appellant | : | |

Appeal from the Order Entered October 8, 2021
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  200203369

BEFORE:   McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.*

MEMORANDUM BY McLAUGHLIN, J.:         **FILED SEPTEMBER 23, 2022**

Gretchen Austin a/k/a Gretchen Alston ("Austin") appeals from the order granting Petro's Bread Distributors Inc.'s ("Petro's Bread") cross-motion for a preliminary injunction. Austin argues Petro's Bread did not prove injunctive relief was necessary to prevent immediate and irreparable harm that cannot be compensated adequately by money damages. She also argues the relief granted was overbroad. We affirm.

In February 2020, Petro's Bread filed a complaint against Austin seeking a permanent injunction. Petro's Bread alleged that it had operated its business at the same location on South 11th Street in Philadelphia for over 30 years, and for at least 20 years it has used a loading zone in front of the business

_____

* Retired Senior Judge assigned to the Superior Court.

that allowed 30-minute loading from 6 p.m. to 9 a.m., Monday through Sunday. Complaint at ¶ 4. It claimed the loading zone is critical to its business, stating customers park their vehicles in the loading zone, obtain bread from the business, load their vehicles, and depart. *Id.* at ¶ 6.

Petro's Bread alleged that Austin moved to South 11th Street when the loading zone already existed. Over the course of 10 years, she has allegedly "engaged in a course of conduct of harassing and threatening [Petro's Bread's] employees and customers when they utilize the loading zone, at times utilizing threats and profanity." *Id.* at 7-8.

According to Petro's Bread, Austin "called and harassed" the Philadelphia Parking Authority and the Philadelphia Police Department to get them to write tickets against Petro's Bread's employees and customers, resulting in Petro's Bread spending time and resources to resolve the disputes. *Id.* at ¶ 9. It allegedly was compelled to attend a mediation hearing with the Philadelphia Human Relations Commission that resulted in a mediation agreement allowing the loading to continue under certain circumstances. *Id.* at ¶ 10. It claimed Austin breached the agreement by continuing to harass and threaten the customers and employees and lobbying city officials to remove the loading signs.[1] *Id.* at 11. Petro's Bread asserted that she "harassed Philadelphia Parking Authority officials" into removing the loading signs, resulting in Petro's

---

[1] The mediation agreement attached to the complaint does not contain a restriction on Austin's conduct. *See* Complaint, at Exh. A.

Bread's customers being ticketed or forced to load the trucks and vehicles in a loading area across the street, causing risk of injury. *Id.* at ¶ 12.[2]

In a counterclaim, Austin asserted Petro's Bread operates its business "in a manner that is highly disruptive, annoying, and offensive" to Austin, her family, and their residential neighbors. Answer to Petro's Bread's Complaint, filed May 19, 2020, at Counterclaim at ¶ 7. She alleged that Petro's Bread has failed to limit late-night noise generated by its business. *Id.* at ¶ 9. She asserted that its customers consistently load and unload bread shipments in the middle of the night and into the early morning hours. *Id.* at 10. According to Austin, Petro's Bread's customers park or idle the commercial trucks on the public right of way, often in front of or in close proximity to Austin's home. *Id.* at ¶ 11. She maintained the trucks have "routinely generated excessive noise during the middle of the night and into the early hours of the morning," disrupting sleep and causing disruption and annoyance. *Id.* at ¶¶ 12-13. She further maintained Petro's Bread violated the mediation agreement, in that it did not ensure customers used the loading zone and refrained from idling, double parking, and dragging bread baskets. *Id.* at ¶ 20. Austin asked the court to restrain Petro's Bread from, among other things, loading and unloading commercial trucks between the hours of 8:00 p.m. and 7:00 a.m.

In November 2020, Austin filed a motion for a preliminary injunction against Petro's Bread alleging Petro's Bread's business was causing excessive

---

[2] The loading zone has since returned to its prior location.

noise six days per week in the middle of the night and that it caused her to be unable to sleep. She requested that Petro's Bread be required to comply with nuisance statutes that establish maximum noise limits and prohibit commercial vehicles from idling. She also asked that Petro's Bread's customers be prohibited from parking, idling, loading and operating near Austin's home and other homes in the area.

Petro's Bread filed a response to the motion as well as a cross-motion for a preliminary injunction. It alleged Austin had engaged in a series of profanity laced tirades and had harassed and accosted Petro's Bread's customers and employees. In support, Petro's Bread provided an affidavit from its principal, George Trantas. He stated that, among other things, he has "witnessed [Austin] harass, use profanity, scream, and yell at [him] and [his] customers and employees." Cross Motion for Preliminary Injunction, filed Dec. 21, 2020, at Exh. C, Affidavit of George Trantas. He also said that his customers have informed him they do not want to be continually harassed and that Austin's conduct is harming his business in ways that cannot be compensated by damages.

The court held hearings on the cross-motions, in April and May 2021, and saw a video of Austin screaming and yelling at a customer of Petro's Bread at 3:58 a.m., when no trucks were in front of her home. N.T., 5/5/2021, at

14, 16.[3] Counsel stated that Austin made "more noise than the actual problem itself." *Id.* at 15. He said that it "gets to be a very difficult" and "unsafe," as it happens "[l]ate at night" and you have "people screaming and yelling at each other." *Id.* at 16. Counsel further stated that Petro's Bread had not had any air management violations for more than five years. N.T., 4/7/21, at 20-21.

The court issued an order denying Austin's motion for preliminary injunction and granting Petro's Bread's cross-motion for a preliminary injunction. Austin timely appealed, and in September 2021, this Court vacated and remanded the May 2021 order because Petro's Bread failed to file a bond. *See* Pa.R.C.P. 1531(b). In October 2021, the trial court issued an order granting Petro's Bread's renewed motion for preliminary injunction, ordered Austin to "cease and desist from directly harassing or accosting [Petro's Bread's] employees and customers," and ordered Petro's Bread to post a bond in the amount of $5,000.00. Austin again filed a timely notice of appeal.

Austin raises the following issues on appeal:

> 1. Whether the trial court erred as a matter of law in granting [Petro's Bread's] preliminary injunction since the record failed to establish that the preliminary injunction requested was necessary to prevent immediate and irreparable harm that cannot be compensated adequately by money damages.

---

[3] The video was not made a part of the record. Austin does not dispute that the video depicted her yelling and screaming at a customer of Petro's Bread at 3:58 a.m.

2. Whether the trial court erred as a matter of law in granting [Petro's Bread's] preliminary injunction since [Petro's Bread] made no showing that the alleged harm that [Petro's Bread] sought to prevent would be irreversible and not compensable by damages.

3. Whether the trial court erred as a matter of law since the preliminary injunction granted by the [c]ourt is overbroad and is not reasonably suited to abate the offending activity.

Austin's Br. at 4.

We review an order granting or denying a preliminary injunction for an abuse of discretion. *SEUI Healthcare Pa. v. Commonwealth*, 104 A.3d 495, 501 (Pa. 2014). We apply a "highly deferential standard" and do not "inquire into the merits of the controversy[.]" *Id.* (citation omitted). We instead "examine[] the record 'to determine if there were any apparently reasonable grounds for the action of the court below.'" *Id.* (citation omitted).

To obtain a preliminary injunction, the petitioner must demonstrate six prerequisites:

(1)    the injunction is necessary to prevent immediate and irreparable harm that cannot be compensated adequately by damages;

(2)    greater injury would result from refusing the injunction than from granting it, and, concomitantly, the issuance of an injunction will not substantially harm other interested parties in the proceedings;

(3)    the preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct;

(4)    the party seeking injunctive relief has a clear right to relief and is likely to prevail on the merits;

> (5) the injunction is reasonably suited to abate the offending activity; and,
>
> (6) the preliminary injunction will not adversely affect the public interest.

***See id.*** at 502 (citing ***Warehime v. Warehime***, 860 A.2d 41, 46–47 (Pa. 2004)).

To demonstrate irreparable harm, a petitioner "must present 'concrete evidence' demonstrating 'actual proof of irreparable harm.'" ***Greenmoor, Inc. v. Burchick Const. Co., Inc.***, 908 A.2d 310, 314 (Pa.Super. 2006) (citation omitted). The "claimed 'irreparable harm' cannot be based solely on speculation and hypothesis." ***Id.*** (citation omitted). If the six prerequisites are satisfied, "the court must narrowly tailor its remedy to abate the injury." ***Matenkoski v. Greer***, 213 A.3d 1018, 1027 (Pa.Super. 2019) (citing ***John G. Bryant Co., Inc. v. Sling Testing & Repair, Inc.***, 369 A.2d 1164, 1167 (Pa. 1977)).

In her first two issues, Austin claims Petro's Bread did not establish the injunction was necessary to prevent immediate and irreparable harm and that any harm can be adequately compensated by money damages. She maintains Petro's Bread's basis for the requested injunction consisted of speculation that harm might result in the future, and contends that an injunction is not proper where a nuisance is "merely anticipated or threatened." Austin's Br. at 10. She argues Petro's Bread presented no concrete evidence to support the alleged harm, dismissing Trantas's affidavit as "neither notarized nor signed under penalty of perjury." ***Id.*** at 11.

Austin further maintains this Court should reverse the preliminary injunction because the harm alleged would have been compensable through money damages. She alleges the harm was that Petro's Bread might lose customers and, if it did, it could bring a claim in tort to seek damages for the loss.

The trial court concluded the injunction was supported by evidence demonstrating the immediate and irreparable nature of the harm, including Petros' Bread's affidavit and the video:

> Contrary to [Austin's] claims the harm sought to be prevented in this case was not "based solely on speculation and hypothesis[,]" but instead supported by several pieces of concrete evidence demonstrating the immediate and irreparable nature of harm inflicted upon [Petro's Bread's] business, employees, and customers. The record also demonstrates that if [Austin] was allowed to continue in her harassment that this harm would persist indefinitely. Specifically, an affidavit submitted by [Petro's Bread] stated the owner has witnessed Austin "harass, use profanity, scream and yell at me and my customers and employees." Affidavit of George Trantas, dated Dec. 12, 2020.][4] This affidavit also generally describes the detrimental impact these actions have had upon [Petro's Bread's] business, its employees and customers. The document further demonstrates the significant disruption and general toll [Austin's] actions have taken upon [Petro's Bread's] business from a logistical standpoint. The affidavit also demonstrates [Petro's Bread] has made significant efforts to

---

[4] The trial court stated the affidavit "meticulously details numerous incidents of yelling and shouting of profanity by" Austin. Although the affidavit describes Austin's conduct, it did not detail each incident. Trial Court Opinion, filed Feb. 16, 2022, at 6 (footnotes omitted). However, it did review the video evidence submitted by Austin and explain its view that the videos did not establish violations.

reasonably alleviate concerns expressed by [Austin], but that [Austin] still continued with her harassing behavior.

In addition, at the April 7, 2021 hearing counsel for [Petro's Bread] descriptively outlined the dangerous situation created by [Austin's] actions in cursing and yelling at [Petro's Bread's] delivery drivers while loading and unloading bread trucks in the middle of a regularly traveled city street. This concern was further reiterated by counsel at the May 5, 2021 hearing, at which time he indicated his client just wanted the problem to stop and claimed [Austin's] screaming and yelling was only making the situation worse. [Petro's Bread] also maintained that [Austin] was "making more noise than the actual [claimed] problem itself." [Petro's Bread] further presented this Court with affirmative and direct evidence in the form of a video depicting [Austin] harassing, yelling, and cursing at [Petro's Bread's] drivers in the middle of the night at approximately 3:58AM. Accordingly, since there was substantial evidence to support a finding of immediate and irreparable harm this Court's decision to grant [Petro's Bread's] requested injunctive relief rested upon adequate and reasonable grounds.

Trial Court Opinion, filed Feb. 16, 2022, at 6-7 (footnotes omitted).

The trial court further found the alleged harm could not be adequately compensated by money damages. It noted Petro's Bread was not merely alleging economic harm to its business, but also incidences of significant disruption and safety risks:

One of the central issues [Petro's Bread] represented to the Court at both hearings was the danger posed by [Austin's] actions in reference to [Petro's Bread's] employees, customers and even [Austin] herself. Specifically, [Petro's Bread] represented to the Court that the actions of [Austin] in the middle of the night yelling, screaming, and cursing at [Petro's Bread's] employees and customers posed a very "difficult and dangerous situation" not sustainable moving forward. [N.T., 5/5/21, at 16; N.T. 4/7/21, at 20-23] Pennsylvania Courts have specifically noted that expressive activity while permissible in public forums can be subject to

"reasonable time, place and manner restrictions." [*See* ***Klebanoff v. McMonagle***, 552 A.2d 677, 678 (Pa.Super. 1988)]. Courts have additionally indicated that while the general public has the right to organized protest it does not possess the right to engage in excessive harassing or threatening behavior. Courts have further indicated that where the irreparable harm claimed is not solely monetary, and accompanied by other harm that the remedy of monetary damages alone may not be deemed adequate and injunctive relief can be proper. Here, in the present matter [Petro's Bread] is not simply alleging economic harm to its business alone, but also citing incidences of disruption and safety issues presented by [Austin's] conduct in yelling, harassing, and screaming, at employees and customers in the middle of the night on a frequently used public street in a residential neighborhood. The safety issues presented by [Austin's] actions cannot be adequately compensated by monetary damages alone as her actions pose an immediate disruption and significant risk of harm to [Petro's Bread's] customers, and employees. This Court further notes that the actions of [Austin] in the middle of the night would also constitute a significant disruption to the peace and tranquility of the surrounding residential neighborhood as well as to any members of the public present in the immediate area. Given the significant safety issue posed by [Austin's] actions, as well as the general disruptive nature of her conduct it cannot be said her activities can simply be alleviated by an award of monetary damages. As such, because [Austin's] actions in this case amount to much more than just monetary harm, this Court's decision to grant [Petro's Bread] its requested injunctive relief was proper.

*Id.* at 8-9 (footnotes omitted).

We conclude the trial court did not abuse its discretion in finding Petro's Bread proved it would suffer immediate and irreparable harm not adequately compensable by money damages if the court did not issue an injunction. There are apparent reasonable grounds in the record that support the court's decision, including the affidavit submitted by Petro's Bread and the description

of the video depicting Austin's conduct. The alleged harm was not solely economic, but also concerned the safety of Petro's Bread's customers and employees.

Austin next challenges the breadth of the injunction, claiming it was overbroad. She asserts that the harm Petro's Bread alleged was loss of goodwill and customers, but the preliminary injunction is not limited to interactions involving Petro's Bread's customers, but extends to its employees. She further maintains the order fails to reasonably apprise Austin as to the types of conduct that would constitute harassment or accosting, arguing such terms are "potentially subjective and subject to debate and interpretation." Austin's Br. at 16.

As noted above, a court "must narrowly tailor its remedy to abate the injury." ***Matenkoski***, 213 A.3d at 1027 (Pa.Super. 2019) (citing ***John G. Bryant Co., Inc.***, 369 A.2d at 1167). Therefore, an injunction "should be as definite, clear, and precise in its terms as possible, so that there may be no reason or excuse for misunderstanding or disobeying it." ***Id.*** (quoting ***George F. Mayer and Sons v. Com., Dep't of Envtl. Res., Phila. Strike Force***, 334 A.2d 313, 315 (Pa.Cmwlth.Ct. 1975)). Terms of an injunction are not sufficiently specific if they call upon the party enjoined to make "inferences or conclusions about which persons may well differ." ***Id.*** (citation omitted).

The trial court concluded the preliminary injunction was reasonably directed at the offending conduct:

- 11 -

[Austin's] conduct and speech were not taking place during reasonable hours of the day or in an orderly fashion. Instead, as shown by [Petro's Bread's] documentary and video evidence [Austin] was yelling, screaming and shouting obscenities at employees, and customers in the middle of the night often between 3 AM and 5 AM in the morning. All of this was occurring while individuals were in the process of loading and unloading bread products for [Petro's Bread's] company. Given that the nature of the area involved was a residential city street and that the pattern of normal activities did not include any type of conduct similar to [Austin's] yelling, this Court properly limited [Austin's] harassment and accosting behavior towards [Petro's Bread]. This Court notes in limiting this conduct, it did not limit [Austin's] right to express her opinion through alternative channels of communication. Specifically, this Court did not limit [Austin's] ability to voice her opposition to [Petro's Bread's] business or its activities in an orderly fashion during reasonable hours of the day, or otherwise limit her ability to organize any kind of peaceful demonstration or protest. This Court further did not prohibit [Austin] from taking any kind of political or civil action to oppose [Petro's Bread's] conduct. Simply put this Court merely limited [Austin] to cease in her accosting and harassing behavior that entailed yelling, screaming and shouting obscenities at [Petro's Bread's] employees and customers during unreasonable hours of the day. Such behavior by [Austin] was not only patently disruptive to [Petro's Bread's] business, but also disruptive to the surrounding residential neighborhood and creating a dangerous situation for all parties involved. As such, this Court's October 7, 2021 Order was not unconstitutionally overbroad because it was reasonably suited to abate [Austin's] offending disruptive activities that were encompassed within her harassing and accosting behavior.

1925(a) Op. at 11-12 (footnotes omitted).

The court did not abuse its discretion in finding the injunction was not overbroad. As the trial court noted, it merely enjoined Austin from harassing

and accosting behavior, and she was free to continue to lodge complaints against Petro's Bread in other manners. ***See Matenkoski***, 213 A.3d at 1027.

We further disagree with Austin that the terms used in the injunction did not reasonably apprise her of the proscribed behavior. Austin's argument on this point is somewhat undeveloped and moreover does not correspond to the issue identified in her Pa.R.A.P. 1925(b) statement. Her argument is undeveloped in that she fails to point to any authority other than those standing for the general rule that an injunction should be as definite, clear, and precise in its terms as possible. She offers no authority, not even a dictionary definition, to support her assertion that "[w]hat constitutes harassment or accosting is potentially subjective and subject to debate and interpretation." Austin's Br. at 16. As for her Rule 1925(b) statement, that document challenged the breadth of the injunction on First Amendment grounds and because it was allegedly not reasonably suited to abate the offending activity. Neither of those assertions includes within its bounds a claim that the language of the injunction was insufficiently specific. Furthermore, her brief's statement of questions involved does not include a claim challenging the specificity of the injunction.

For these reasons, Austin has waived this argument. ***See*** Pa.R.A.P. 1925(b)(4)(vii); ***Commonwealth v. Williams***, 732 A.2d 1167, 1175 (Pa. 1999); ***In re M.Z.T.M.W.***, 163 A.3d 462, 466, n.3 (Pa.Super. 2017) (appellant waives issues that are not raised in both the concise statement of errors complained of on appeal and the statement of questions involved).

Moreover, if she had not waived this argument, we would disagree that the terms used in the injunction were not specific enough.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/23/2022